CITIZENS RAILWAY COMPANY v. LORENA W. ROBERTSON.

Decided January 19, 1910.

**Contributory Negligence—Child Crossing Street Car Track—Question of Fact.**

Evidence considered in case of a child of ten years who, looking down and reading a letter in her hand and holding on her hat which the wind threatened to blow away, walked onto a street car track at a street crossing without looking or listening for a car and was struck and injured, and held not to show conclusively the contributory negligence of such injured party, but to warrant the submission of that issue to the jury.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Clark, Yantis & Clark,* for appellant.—In support of the proposition that the acts of appellee, if committed by an adult would be contributory negligence, as a matter of law, reference is made to the following authorities: Houston & T. C. Ry. Co. v. Kauffman, 46 Texas Civ. App., 72; International & G. N. R. Co. v. Edwards, 100 Texas, 22; Sabine & E. T. Ry. Co. v. Dean, 76 Texas, 73; Bennett v. St. Louis S. W. Ry. Co., 36 Texas Civ. App., 459; Galveston, H. & S. A. Ry. Co. v. Bracken, 59 Texas, 71; Galveston, H. & S. A. Ry. Co. v. Polk, 63 S. W., 343.

In support of the proposition that the acts of appellee constituted contributory negligence as a matter of law, notwithstanding her minority, see the following authorities: Houston & T. C. Ry. Co. v. Boozer, 2 Posey's U. C., 452; International & G. N. R. Co. v. Garcia, 70 Texas, 208; Payne v. Chicago & A. R. Co., 38 S. W., 314; Young v. Small, 73 N. E., 1019; Mullen v. Springfield St. Ry. Co., 41 N. E., 664; Colcomb v. Portland & B. St. Ry., 61 Atl., 898; Gleason v. Smith, 61 N. E., 220; Nagle v. Allegheny Valley Ry. Co., 32 Am. Rep., 416; Twist v. Winona & St. P. Ry. Co., 12 Am. St. Rep., 626; Ryan v. LaCrosse St. Ry., 83 N. W., 770; Sheets v. Connolly St. Ry., 24 Atl., 483; Deschner v. St. Louis & M. R. Ry. Co., 200 Mo., 310; Holian v. Boston Elevated Ry. Co., 80 N. E., 1; Poland v. Union Ry. Co., 58 Atl., 653; Walker v. Wabash Ry. Co., 92 S. W., 92; Holmes v. Missouri Pac. Ry. Co., 88 S. W., 624; Murphy v. Boston Elevated Ry. Co., 73 N. E., 1018; Dietrich v. Baltimore & H. S. Ry. Co., 11 Am. & Eng. R. R. Cases, 115; Griffith v. Metropolitan St. Ry. Co., 66 N. Y. Supp., 801; Wills v. Ashland St. Ry. Co., 84 N. W., 998; Weiss v. Metropolitan St. Ry. Co., 53 N. Y. Supp., 449; Biederman v. Dry Dock Co., 66 N. Y. Supp., 594; McLaughlin v. New Orleans & C. Ry. Co., 18 So., 703; Merryman v. Chicago, R. I. & P. Ry. Co., 52 N. W., 545; Carson v. Chicago, R. I. & P. Ry. Co., 65 N. W., 831; Brown v. European & N. A. Ry. Co., 58 Me., 384; Twist v. Winona & St. P. Ry. Co., 39 N. W., 402; Schmidt v. Cook, 20 N. Y. Supp., 889; Knox v. Hall Steam Power Co., 23 N. Y. Supp., 490; Helman v. Withers, 50 Am. St. Rep., 295.

*Jas. A. Harrison* and *W. B. Carrington,* for appellee.—Appellee was not guilty of contributory negligence as a matter of law under the

testimony of herself and witnesses. International & G. N. R. Co. v. Tinon, 117 S. W., 936; Missouri, K. & T. Ry. Co. v. James, 55 Texas Civ. App., 588; Frugia v. Texas & Ft. S. Ry. Co., 36 Texas Civ. App., 648; Gulf, C. & S. F. Ry. Co. v. Coleman, 51 Texas Civ. App., 415; Texas Central R. Co. v. Randall, 51 Texas Civ. App., 249; Chicago, R. I. & P. R. Co. v. Shannon, 50 Texas Civ. App., 194; Gulf, C. & S. F. Ry. Co. v. Grisom, 36 Texas Civ. App., 630; Gulf, C. & S. F. Ry. Co. v. Gasscamp, 69 Texas, 549; Choate v. San Antonio & A. P. R. Co., 90 Texas, 88; Houston & T. C. R. Co. v. Boozer, 70 Texas, 530; Houston & T. C. R. Co. v. Simpson, 60 Texas, 103; Galveston, H. & N. R. Co. v. Olds, 112 S. W., 787.

KEY, Associate Justice.—This is the third time that this case has been before this court. The other appeals are reported in 91 S. W., 609, and 103 S. W., 443. At the last trial in the court below the plaintiff recovered judgment for $1500, and the defendant has appealed and presents but one question for decision, and that is the proposition that, as matter of law, the undisputed testimony shows that the plaintiff was guilty of contributory negligence. At the time of the accident the plaintiff was ten years, five months and ten days old. The last trial occurred more than four years after that time, and we copy from appellant's brief the testimony relied on to show contributory negligence.

The plaintiff testified as follows: "I remember being injured on the 24th day of June, 1904. Just before I was hurt I had been to Mrs. E. A. Jones'. I left home and went there after a letter. In going to Mrs. Jones' I crossed 18th Street, and Mrs. Jones lived about two or three blocks this way from 18th Street. I got the letter, and after getting it I was on my way home with it. I recall just before reaching 18th Street. I was wearing a big sailor hat that day. The wind was blowing. There was a soda water stand right on the corner of 18th Street and Columbus. I saw there were five or six boys about there, and there was another boy across the street; the boy across the street was in a buggy holding the horse. As I passed the soda water stand, I saw my brother, Charlie West, Oscar Moore and Mackey Sparks. Fred Bolinger was in the buggy across the street. Just after I passed the soda water stand I looked at a letter and looked at the address. At that time I was looking down; the wind was blowing and I had to hold my head down to keep my hat on. In crossing 18th Street I reached the track. Before I reached the track I recall walking on a board that was across a little gully. In passing that gully or board I was looking down. The board was on the street. The part of the street the board was on was the sidewalk. The sidewalk crossed 18th Street at that point. That sidewalk was used by people going by; they usually went over it if they were walking. I walked along the same place going up to Mrs. Jones'.

"After passing the soda water stand and crossing this little place on the board the car ran over my foot. Just as I was going across, I just got over the first rail—and I think I was in the middle of the track, but I was over the first rail, I know—and I was looking at this letter all the time, and, of course, I lifted my feet to go over the

rail and the next thing I knew the car struck me. . . . I lived about one block from where I was injured. I knew at the time I was injured that the street car track was there. I had known that for a number of years. I had in the past watched out for the cars when I went across there, because I was afraid I would be injured if I did not notice for them. I understood that it would be dangerous for me to come against one of the street cars in motion, or to cross the track without looking. I knew the only way to be entirely safe there in crossing the track was to look and see if the car was coming, and also, I suppose, to listen and see if I could hear it. I realized that. I knew how to keep out of the way of a car if I saw it coming. I had understood that for a good while. I suppose any child knows all that as well as any grown person. I had been taught by my parents about the danger of the street cars ever since I could remember; I had crossed and recrossed this track at that place.

"At the time I entered onto the track the day I got injured there was nothing at all between me and the street car. It was a perfectly straight track there—a perfectly open, clear way. If I had looked I could have seen the car before I entered on the track, if it was coming. I do not know that it was coming; I did not see it; I don't guess I did look. I was looking at the envelope and the wind was blowing, and I was holding my head down. I was looking at the envelope at the time the car struck me, and I did not look up for the car. Although the wind was blowing, I suppose it would not have prevented me from raising my head and looking. I was holding my hat on; I guess I was afraid that I would lose my hat. Regardless of how hard the wind was blowing, I could have looked if I wished to. I suppose I forgot to look; I don't know whether I forgot to look or not, but I did not look. I was reading the letter at the time. I could have seen the car if I had looked, clear down to Austin Avenue where it turns there; it is a distance of about two blocks that I could have seen it.

"At the time that the accident happened I had just passed by this soda water stand, and I told my brother to come home. I was not reading the letter when I passed there; I started to read it just as I passed. . . . I did not see the car which way it was coming. I did not see the car until it struck me, and I felt it then. I did not find out which way the car was going. I never did know which way the car was going. . . . The car crossed there every ten minutes; it crosses there both ways. . . . I saw Fred Bolinger in the buggy across the street. I saw the buggy. I saw the horse that was hitched to the buggy and saw it was in motion, backing. I saw five or six boys there. I saw Charlie West and young Mr. Moore and Mackey Sparks and my brother. That was all the boys I believe I saw. I saw the stand there made out of sacks. I saw the walk toward the track or plank. I saw the street car track. As to my seeing everything but the street car, all these things were not on the same side as the street car, except Fred Bolinger, and he was farther down.

"If I had done as I had done in the past, and looked down the track before I entered upon the track, I don't know that I would have been struck. I don't suppose I would. I don't guess so. I testified in

this case in October, 1906, the trial before the last one. I did not testify then that the wind was blowing hard. They did not ask me that. I did not testify at that time that I had on that broad sailor hat, but I did; I can show you the hat at home. I did not testify about it at that time. I was on the track, I guess, at the time I was struck. I had just crossed over the first rail. I do not know whether I had reached the middle of the track; I know I had crossed over the first rail; that is all I remember. As to my having testified at the other trials that I was right in the middle of the track, if I had crossed over the rail I was bound to have been in the middle, because a step makes you over in the middle; just about in the middle of the track when you go about a step. I say that I was right in the middle of the track—just about the middle of the track. I noticed the rail when I stepped over it. It was my right foot that was hurt. I never did see the car at all until I was struck. There was nothing in the world to obstruct my view there. I did not pay any attention to it at all. . . . I was facing south; that is, towards my home. My left side was to the car and I was in the middle of the track. I was looking at the envelope when the car struck me. . . . I did not see the car and I do not know how fast it was running. I just passed by the soda stand. I just passed by and told Irion to come home; I did not stop at all; I just walked on by and told Irion to come on home as I was going. I do not think I even stopped. I had not been reading the letter as I approached the soda stand; I just looked at it as I passed. As I came by the soda stand I was looking at the boys and the soda water stand. I don't know whether I could have seen the car then if I had looked; I don't know where it is; it depends on how fast it was going as to whether I could have seen it then. A car makes a noise when it is going. I hear the car down on the street now making a noise. I could have heard that car that struck me, I suppose, if I had listened, if it was coming. I did not listen. I was paying no attention; that is right."

Frederick Bolinger testified as follows: "I am the son of D. C. Bolinger. . . . I am fourteen years old now. . . . I remember the time that Lorena Robertson was hurt at the corner of 18th and Columbus Streets in June, 1904. I was about ten years old then. At that time I was in a buggy. The buggy was about as far from here to the back railing in the courtroom from the street car and I was in the buggy. The buggy was on Columbus Street close by the crossing of 18th and Columbus Streets. The buggy was about as far as from here to the table from 18th Street—it may be a little farther. I saw the car as it came into Columbus Street up 18th Street. Just as the car came into Columbus Street the horse began to cut up. I was in the buggy by myself. The horse was backing around and pulling up and twisting about. He cut up because he was afraid of the street car.

"Lorena Robertson was coming up the street on the sidewalk and she was reading something in her hand, and she went to the crossing off the sidewalk and ran into the car at the front end and then she fell and the car ran over her foot. She ran into the car. . . . The car was going very slowly just before it struck Lorena. I do not

know exactly why the car was going slow, but I think the motorman was trying to stop because my horse kept cutting up. The motorman was looking at my horse just before Lorena was hurt by the car. I think the car slowed down just when the horse began cutting up, I am sure it did. . . . Just at the time Lorena hit the car she was reading something. I do not know what it was. She had her head down and was just reading along. . . . The car stopped immediately after it struck Lorena's foot. I know it stopped immediately, but I do not know how far it went. . . . I noticed what Lorena was doing when she passed the soda water stand on the corner; she was reading. The soda water stand was about as far as from here to the table from the car track—just a short distance. As Lorena passed the soda water stand the motorman was looking at my horse. The horse was cutting up then. Think it was a wild horse. It was Mr. West's horse."

We also copy from appellee's brief the following testimony:

Plaintiff testified: "I had not heard any car. I did not hear any bell ring. I had no warning that the car was coming. I did not hear the car running, rolling; the first I knew was that the car struck me. I was in front of the car. I did not know that it was coming; I did not see it. I was looking at the envelope and the wind was blowing, and I was holding my head down. I guess I was afraid that I would lose my hat. I did not see the car which way it was coming. I did not see the car until it struck me and I felt it then. I did not find out which way the car was going. I never did know which way the car was going. I was holding my hat. The wind was blowing and I was holding my head down to keep my hat on. I was holding my hat on by holding my head down. The wind was blowing towards me, into my face. I had noticed the cars as they passed along crossing Columbus Street at that place. Previous to the time I was hurt I had always heard something coming. I heard the car, and beside the car itself, I heard the gong. The gong would ring. The wind was blowing against me; I don't know which way it was blowing from. It was blowing down the street, right up against my hat, right against me. It was blowing down Columbus Street. When the car struck me I had not seen the car at any time, nor heard it when it was coming."

Irion Robertson, a witness for plaintiff, testified that: "The motorman at the time of the accident was standing with his face towards the boy in the buggy watching him and his horse. The motorman was giving his entire attention to the Bolinger boy and the horse. There are two levers and brakes on the car. I did not notice whether the motorman had his hands on these levers or not. He was standing out in the front of the car in his regular place where the motorman always stands running the car, and he was looking at the boy in the buggy and the horse."

Irion Robertson testified that as to the crossing where the injury occured "there are a great many people who cross there; there are a great many houses there; it is a public crossing in the city of Waco."

We have reached the conclusion that the plaintiff was not guilty of contributory negligence, as matter of law, and that the trial court

did not err in so holding and in submitting that question to the jury. In a well prepared brief, which indicates much research, learned counsel for appellant have cited a number of cases in other jurisdictions similar in many respects to the one at bar, and in which cases it was held that the injured child was guilty of contributory negligence as matter of law. However, in most, if not all, of them there was some material difference. In some of them the injured child had seen the approaching car, and in others, warning was given immediately before the accident.

Houston & T. C. Ry. Co. v. Boozer, 70 Texas, 530, our Supreme Court recognized and applied the rule which distinguishes between adults and children in determining the question of contributory negligence. In that case a boy, between 11 and 12 years of age, while attempting to cross a railroad track, was struck and injured by a passing train. As in this case, there was much testimony tending to show contributory negligence, and in disposing of the case the Supreme Court said:

"As the case now stands, were the appellee an adult, it seems to us the verdict should be set aside; but we can not say that the same degree of care should be exacted of a boy of the appellee's age as must be of an adult. Whether he used that care in attempting to cross the track, and in ascertaining the danger that attended his act, incumbent on one of his age, was a question submitted to the jury by a charge which, on this point and all others bearing on the question of the liability of the appellant at all, was as favorable to the appellant and as exacting on the appellee as the facts would have warranted.

"Two juries have passed upon the facts; twice have judges of the District Court refused to grant new trials. The appellee was of tender years; there was evidence from which the jury might find that the employes of the appellant did not use that care which, under the circumstances, should have been used, and the jury were in position to determine whether the acts of the appellee were, in one of his age, the exercise of such care as such a person should exercise."

International & G. N. R. Co. v. Tinon, 117 S. W., 936, decided by the Texarkana Court of Civil Appeals, is, in many respects, quite similar to this case; and it was there held that the injured party was not guilty of contributory negligence as matter of law, and we presume the Supreme Court approved that holding, as it refused to grant a writ of error. In that case the injured party was a girl about sixteen and one-half years old at the time of the accident. She was traveling a public road on foot, and while attempting to cross a railroad track was struck and killed by a passing train; and, in determining the question of contributory negligence, the court said:

"The evidence was undisputed that the deceased did not stop and look or listen for the train before crossing in front of it. It was undisputed that had she done so she could have seen, if she could not have heard it approaching from the south; but the fact that she did not so stop or look or listen did not as matter of law establish that she was negligent. Texas & P. Ry. Co. v. Chapman, 57 Texas,

75; Texarkana & Ft. S. Ry. Co. v. Frugia, 43 Texas Civ. App., 48, 95 S. W., 563; Gulf, C. & S. F. Ry. Co. v. Anderson, 76 Texas, 251. The question therefore is: Was there other evidence which, when considered in connection with that fact, required the court to say as a matter of law, that deceased was guilty of contributory negligence? There was evidence that the train was due to pass the point where the accident occurred at about nine o'clock on the morning it occurred, and that deceased knew it was due to pass at about that time. There was evidence that on the morning of the accident the train was twelve or fifteen minutes late. There was no evidence showing that deceased knew it was late, and that it had not passed the crossing, nor was there any evidence showing that she knew the time of the day, and that it was about time for it to pass. There was no evidence showing about how many trains usually passed over the crossing during a day. There was evidence that a high wind was blowing from the south, and there was evidence that deceased was wearing a bonnet so tied on and about her head, ears and face as to render it more difficult than it otherwise would have been for her to hear or see the train as it approached the crossing. There was evidence that by looking to her right across the field as she ran towards the crossing she could have seen the train approaching from a point on the railroad at least 250 to 300 yards south of and to the crossing. And finally, there was evidence that without looking to the right or to the left she ran along the public road to the crossing and in front of the train as it reached the same.

"The test which should be applied in determining whether the testimony referred to required the court as matter of law to say deceased was guilty of negligence or not is: Should it be said that the minds of reasonable men fairly might have differed upon the question as to whether in going upon the crossing under the circumstances shown by said testimony she acted as an ordinarily prudent person would have acted or not? Grand Trunk Ry. Co. v. Ives, 144 U. S., 417, 36 L. Ed., 485. We think reasonable men fairly might have differed as to the nature of her act, and that the issue properly was submitted to the jury. A reasonable man fairly might have concluded, it seems to us, that if the deceased knew it was about the time the train was due to pass the crossing she was ignorant of the fact that it was running behind its schedule time, and that it had not passed; or that if she knew it had not passed, she was ignorant of the fact that it was about the time for it to pass. In the absence of evidence showing how trains usually approached and passed the crossing, instead of indulging the presumption that deceased should have expected the train to approach and pass the crossing, as it did, almost noiselessly and at an unusual speed, in favor of appellant's conduct having been blameless, such a man might fairly have indulged the presumption (Meadows v. Pacific M. L. Insurance Co., 129 Mo., 76, 31 S. W., 583, 50 Am. St. Rep., 427), that she had a right to believe, from the manner in which she had before heard and seen trains approach and pass the crossing, that a train approaching it would by its mere movement make such usual noises as would warn her of its approach, and travel at such a usual speed as would

enable her, when so warned, to so act as to protect herself from injury by it. Such a man might further have concluded that always before appellant's employes in charge of the engine had, as they testified they had, given warning of the approach of the train to the crossing by blowing the whistle and ringing the bell of the engine, as was required by law, and that she had a right on the occasion when she was killed to rely not only on such employes complying with the law, but upon their acting as they before had acted in giving warning of the approach of the train. From one or all of such conclusions, such a man, we think, might have reached as the ultimate one the conclusion that deceased was not guilty of negligence contributing to the injury causing her death. Gulf, C. & S. F. Ry. Co. v. Wagley, 15 Texas Civ. App., 308; Frugia v. Texas & P. Ry. Co., 36 Texas Civ. App., 648; Texas & P. Ry. Co. v. Willard, 98 S. W., 220; Missouri, K. & T. Ry. Co. v. Balliet, 49 Texas Civ. App., 641, 107 S. W., 908; Missouri, K. & T. Ry. Co. v. Cardena, 22 Texas Civ. App., 300."

That case, it would seem, was decided upon the theory that the injured girl was an adult, which renders it that much stronger as authority in this case; because, if under the facts disclosed in that case, an injured adult would not be guilty of contributory negligence as matter of law, most assuredly a ten year old child would not be guilty of such negligence under the same or similar circumstances. Taking up the test applied in that case, should it be said that the minds of reasonable men could not fairly differ upon the question as to whether in going upon the street car track, under the circumstances shown by the testimony, Lorena Robertson acted as an ordinarily prudent child of her age would have acted? It will be observed that the test is not, would reasonable and fair-minded men agree that an ordinarily prudent child would have acted as Lorena Robertson did, but the test is, could reasonable and fair-minded men differ upon the subject? We think they could. It is a matter of common knowledge that an ordinarily prudent child, that is to say, an average child, will incur many dangers and risks that an ordinarily prudent adult would not. It is quite an easy matter for the mind of a child to become entirely absorbed upon one particular subject, so as to prevent it from realizing and avoiding impending danger. When they become adults their comprehension of risk and danger becomes more fixed and continuous, and they are less likely to be taken unawares than when they were children. Bearing in mind this marked distinction between the intellectual faculties of adults and children, and keeping in sight the fact that the plaintiff testified that she did not see or hear the approaching car until it struck her, it seems to us that the question of her negligence is one about which the minds of reasonable men might fairly differ. One person might contend that no human being, possessing intelligence enough to know that a passing car would injure any person standing on the track in front of it, could undertake to cross such track without either looking or listening for a car, when he was aware of the fact that they passed at that point about every ten minutes, without being guilty of contributory negligence. On the other hand, another reasonable man might fairly

entertain the view that if such person was a ten year old child, and did not in fact see or hear the approaching car, and the usual signals of approach were not given, and such child's attention was temporarily riveted upon something held in its hand, that in going upon the track without looking or listening, such child was acting as average children of that age do act.

No reversible error has been assigned and the judgment is affirmed.

*Affirmed.*

Writ of error refused.