No. 5957.

THE MISSOURI PACIFIC RAILWAY COMPANY *v.* MARY E. LEE.

1. PLEADING.—See opinion for allegations held sufficient to give cause of action for damages on account of an injury inflicted by the negligence of another. It is not necessary to allege in terms that the injury was the proximate result of the negligence.

2. ESTOPPEL—DEDICATION.—A railway company that constructs a crossing under an agreement with the land owner whose land it appropriates for its road bed, which it recognizes and maintains as a road crossing for the public, is estopped from setting up in action against it as a defense that it is not a public road within the meaning of the statute. Whether such crossing was in a road across the railway dedicated by the owner of the land to public use and was so used by the public, are facts for a jury to determine in a suit against the company on account of injuries inflicted by its train on one who is passing over the crossing.

3. PUBLIC ROADS.—The power conferred on the county commissioners to lay out, establish and change public roads, does not negative the existence of public roads otherwise established. The extent of the use of a road determines its character.

4. RAILROAD COMPANIES—PUBLIC ROADS.—One of the chief purposes of the statute in imposing duties on railway companies in running their trains across a public road, was to protect human life. That policy attaches to the crossing of every road which is in fact public, and where the extent of travel makes it the duty of the owners of railway trains to look after the safety of those using the road as a highway.

5. NEGLIGENCE—CHARGE OF COURT.—It is not proper for a trial judge in charging a jury to attempt to define duties, neglect of which would be negligence, in the absence of a statutory definition of duties which, when disregarded, are negligence as a matter of law. The judge should inform the jury as to the degree of care or skill which the law demands of the party and what duty it devolves on him, and the province of the jury is to find from the facts in evidence whether that duty has been done.

**6. SAME.**—See opinion for facts shown regarding the killing of one at a railway crossing claimed to be over a public road, which killing was by a passing railway train; *held* to be of such a character that the court could not properly withhold from the jury the right to pass on questions of negligence and due care.

**7. MEASURE OF DAMAGES.**—See opinion for charge relating to the measof damages in such a case approved.

APPEAL from Hill. Tried below before the Hon. J. M. Hall.

The opinion states with sufficient fullness the facts of this case. The verdict was for five thousand dollars.

*R. C. Foster* and *A. E. Wilkinson,* for appellant: The court erred in overruling the demurrer to plaintiff's petition because the same was insufficient in that the alleged negligence of the defendant was the cause of the death of Robert E. Lee. Defendant demurred generally and specially, and assigned as a special exception that the petition did not show that the death of Robert E. Lee, therein mentioned, was caused proximately by any act of negligence charged against defendant. (H. & T. C. Railway v. Nixon, 52 Texas, 27; G. H. & S. A. Railway v. Bracken, 59 Texas, 74.)

The court erred in its instructions (third clause) in declaring that the road, where deceased was killed (which appeared by the proof to be inside a private inclosure, and to have never been laid out, worked or classified as a public road), if used for such a length of time as to show that it had been dedicated to the public, would be a public road within the meaning of the statute. (Revised Statutes, art. 4232, as amended by acts of 1883, page 28, General Laws of Eighteenth Legislature, chapter 39; I. & G. N. Railroad v. Jordan, White & Willson's Civil Cases, sec. 859; Rev. Stats., art. 4359 to 4465 and following chapters; Burgess v. Hargrove, 64 Texas, 110.)

The court erred in its instructions in failing and refusing to inform the jury as to the duty of deceased to use his senses of sight and hearing in approaching the railroad track in order to avoid collision with trains and in leaving it to the jury by the fifth and sixth clauses of the charge to determine whether one failing to make any use of his senses of sight and hearing in driving on a railroad track was using due and ordinary care. (Wharton on Negligence, secs. 382, 383; 1 Thomp. on Negligence, sec. 8, p. 426; Pierce on Railroads, 343; Shear. & Red. on

Negligence, 488; Cooley on Torts, 680; Railway v. Bracken, 59 Texas, 71; Schofield v. Railroad, 114 U. S., 615; same case, 19 Am. and Eng. Railway Cases, 353; Railroad v. Houston, 95 U. S., 161; Railroad v. Crowder, 63 Texas, 502; State v. Railroad, 76 Maine, 357; 49 American Rep., 622; 19 Am. and Eng. Railway Cases, 312; Chase v. Railroad, 19 Am. and Eng. Railway Cases, 359; Hoover v. Railroad, 61 Texas, 503; Railroad v. Wilson, 60 Texas, 142; Beach on Cont. Neg., 192, 193; Railroad v. Heilman, 49 Penn. State, 60, 64; Railroad v. Beale, 73 Penn. State, 504.)

The court erred in its instructions to the jury on the measure of damages, and especially in the fifth clause of its charge, whereby it directed them to award plaintiff as damages "such sum as they believed she might have received from the assistance of R. E. Lee, had he not been killed," thereby directing them that it was proper to award any sum they might conjecture deceased might possibly have contributed to her assistance, instead of such sum as would compensate her for the loss of what they believed deceased would have contributed. Said instruction being also erroneous in that it directs an award of a present sum equal to the whole amount of expected contributions during a life time, rather than one which would compensate for the loss of such annual contributions. (Houston & Texas Central Railway Company v. Cowser, 57 Texas, 304; Houston & Texas Central Railway Company v. Burke, 1 Texas Law Reporter, number 5, p. 434; Houston & Texas Central Railway Company v. Nixon, 52 Texas, 25; Houston & Texas Central Railway Company v. Willie, 53 Texas, 327, 328; Houston & Texas Central Railway Company v. O'Hare, 1 Texas Law Reporter, number 6, p. 502; Texas & Pacific Railway Company v. Dye, 3 Texas Law Reporter, p. 125.)

*Crane & Ramsey* and *B. D. Tarlton*, for appellee.

Walker, Associate Justice. This is an appeal from a judgment in favor of appellee for damages for the killing of her son. The appeal questions first, the sufficiency of the petition; second, the question whether the crossing at which the death was caused was at a public road; third, the sufficiency of the testimony to negligence on the part of the railroad, and due care on the part of the deceased; fourth, the charge of the court on the measure of damages; and fifth, the verdict as excessive.

1.   The petition alleges acts of negligence on part of the defendant at the time of the collision; that without negligence on the part of the deceased he was struck by the passing train and killed; and that the death was caused by the negligence of defendant.   These allegations give a cause of action.

2.   The court charged the jury "that a public road is one which is so made by order of the commissioners court, the same being marked out, surveyed and worked by order of said court, or one which is used and appropriated without order of court to the use of the public for such length of time as to show it has been dedicated to the use of the public, and is so used by the public; and where a road has been so used, appropriated and dedicated, the same will in the contemplation of law be a public road."   There was testimony to the public use of the road as a way to the gin and mill of the owner of the land by his customers and by the public, in passing from the villages Itasca and Covington.

The owner of the land had required the railroad company to make the crossing where an *old* road had been.   The crossing had been kept up.   It had been used by the public for at least six years; it was a public road in fact from the manner and extent of its use.   The intent of the land owner with reference to the use of the road and crossing was clear as to persons coming to his gin and mill.   His knowledge of the public use as a highway by the public in passing between the villages Itasca and Covington was undisputed.   The intent on the part of the owner and user by the public evidence a dedication.   The jury in each particular case passes upon the sufficiency of the testimony to the intent of the owner.   The intent may be presumed from the use alone.   From the acts of the owner, and the facts of the public use as given, the jury may find the fact of dedication, without reference to any particular time.   (Thompson on Highways, 55, and cases cited.)   As to the effect upon the railway company of the facts in evidence upon this character of crossing, it seems that the views taken by our Court of Appeals are sound, as stated in the well considered case, opinion by Justice Willson, volume 2, section 204, Civil Cases Court of Appeals:

"Where a railroad company had for several years recognized and maintained a road crossing over its line of railway, as a crossing for the public, it was held to be estopped from setting up as a defense that the road was not a public road.   Under

these circumstances the road will be considered a public road, within the meaning of the statute."

Considering the issue as intended to ascertain the relations and duties of the railway company and the traveling public, with reference to this crossing, we think the charge was sufficiently specific. It required the jury to determine the fact of dedication by the owner and use by the public.

But it is insisted that the amendment to article 4332, Revised Statutes, in inserting the term *public* as descriptive of the roads to which, in that article, the duties enumerated attached, has the effect of a statutory definition, and that only to roads "public" by the terms of the statute is the protection secured. The county authorities have power "to lay out and establish, change and discontinue public roads and highways." (Rev. Stats., art. 1514.) This power does not negative the existence of public roads otherwise established. There is no law in the statutes of Texas, nor consideration of policy, prohibiting to a road by dedication by the owner of the soil and sanctioned by the needs and by use of it by the public. The courts would protect such a road from invasion. The extent of the use of a road determines its character as public or not as a fact.

The purpose of the statutes, or the principal ones, imposing duties upon railway companies in running their trains across the public roads, was to protect human life. That necessity would attach to the crossing of every road in fact public, and where the extent of travel made it a duty on the part of the owners of the railway trains to look after the safety of those using the road as a highway. We can not attach to the word public in the amended act any other meaning than as including all public roads, whether in law or in fact. We think where the crossing is public, and that fact known to the railway company, that the duty of carefulness arises. (Ewen v. Ch. & N. W. Railway, 38 Wis., 634.)

The court charged the statutory duties imposed upon railroad companies when crossing public roads. The degree of care required of the deceased was stated to be "such care in approaching and in attempting to cross the defendant's railroad as a man of ordinary prudence under similar circumstances would have used." The jury were repeatedly told that if the deceased was wanting in such due care, his mother, the plaintiff, could not recover, whatever they might find as the conduct of the defendant.

The defendant asked instructions to the effect that "it was the duty of deceased to make use of his senses of sight and hearing to discover the approaching train, and that if injured by reason of failing to look when, by looking before driving upon the track, he could have seen the approaching train," recovery could not be had.   Our courts have refused to recognize as the duty of the trial judge to attempt to define duties, neglect of which would be negligence, in absence of statutory definitions of duties which, disregarded, are negligence as matter of law. (Railroad Company v. Wilson, 60 Texas, 142; Railroad Company v. Chapman, 57 Texas, 75.)   "The judge is to inform the jury as to the degree of diligence or care or skill which the law demands of a party and what duty it devolves upon him, and the jury are to find whether that duty has been done."   (1 Greenl. on on Ev., 14 ed., 72, note C.)

The rule given as to degree of care required of deceased is recognized by former decisions of this court. (50 Texas, 254 57 Texas, 302; 56 Texas, 334; 46 Tex as, 356; 63 Texas, 660. Having given the proper rule to the jury, the judge had performed his duty unless, from the whole case as made by the testimony, the plaintiff had no testimony upon which the jury could reasonably have found a verdict in her favor; in which state of facts the court could have refused to submit the case to the jury.   The plaintiff's case would fail from absence of testimony to any negligence on part of defendant, or upon absence of any testimony from which a jury could find due care or its equivalent, absence of negligence on part of deceased.

Appellants insist that the testimony discloses a total absence of care on part of deceased, and that his death was caused by his recklessly attempting to cross the track when any, the slightest, care would have informed him of the danger.

What is due care under a given group of facts must be determined by the jury by applying the rule as to what, in their judgment, a man of ordinary prudence would have done under the attendant circumstances.   It is reasonable that a sane man will not knowingly and recklessly expose himself to imminent bodily danger—that the instincts of self preservation existed. It may be inferred, then, that the deceased did not know of the presence of the approaching train at the time he drove upon the track.   We may ask why did he not know it, and what was his duty in regard to it?

It appears in the record that the deceased, in a wagon with

high sideboards, had been driving southward near four hundred feet, nearly parallel with the track and a distance of less than two hundred feet from it; that he turned to the right and traveled west about seventy-five feet to reach the track; that at the angle, and between that and the track, the right of way, which was fifty feet, was grown up with sun flowers and weeds so high that the view to the track was obstructed; a violent wind was blowing from the south. The trains in passing this crossing usually had been signaled by the ringing of the bell or the blowing of the whistle. The train (a passenger) was behind time, and was moving at unusual speed. There is testimony that from the angle and to the track the deceased could not have seen the approaching train—unless, perhaps, on sharp lookout—from the weeds, etc., obstructing his view. It does not appear that in going southward parallel with the track, and going in the same direction with the train, he could have seen the train unless he had risen to his feet in the wagon and looked back upon the track. From the testimony we may infer from the speed at which the train was moving, that it was not in his sight save by looking back, else it had reached the crossing before the deceased. The deceased had a right to be upon the road—had a right to cross the track. No bell or whistle sounded, warning the approach of the train. Deceased had a right to expect such signals. The weeds obstructed his view; the wind storm deadened the sound of the train; he was run upon and killed without warning. In this state of facts, if the road was public, and the statutory duties required of defendant in crossing public roads existed, then the court could not properly withhold from the jury the right to pass upon the questions of negligence and due care, etc. The charges asked by the defendant and refused, where not already given, were not applicable to the case, and no error was committed in refusing them.

The measure of damages given by the court is: "Such sum as you may, under the evidence, reasonably believe plaintiff might have received from the assistance of Robert E. Lee (the deceased) had he not been killed by the train of defendant, and you may, in estimating such sum, if any, consider, under the evidence before you, the age of said deceased, the time he might have lived; the age of the plaintiff, the time she may probably live, and any other evidence tending to show what damages, if any, she may have suffered by reason of the killing of said

R. E. Lee." * * * * "You will find for plaintiff such damages under the instructions hereinbefore given as you may think will compensate her for the loss, if any, she may have sustained by the killing," etc.

We do not believe that the use of the word "might" instead of "would" could have misled the jury as descriptive of the pecuniary benefit anticipated. Nor does it appear that the enumeration of subjects of consideration necessarily or even probably extended the limits of investigation by the jury beyond what from the testimony plaintiff reasonably would have received had her son lived. Nor is the further clause as to compensation misleading, for express reference is made to the preceding part of the charge. The true measure is "a sum equal to the pecuniary benefit the parent had a reasonable expectation of receiving from her child had he not died." (62 Texas, 174; 64 Texas, 490; 57 Texas, 293; 52 Texas, 19; Rev. Stats., 2609.)

The amount of the verdict is larger than under the testimony probably this court would have found. But there was testimony that the deceased was the oldest son of his widowed mother; that he was sober, industrious and economical. He worked for his mother; he aided her with counsel and advice. His devotion to his mother was such that his neighbors could testify to repeated declarations that he would support her as long as she lived. He was but a farm hand working for wages, and his mother a renter. The idea given in the testimony of this boy's character, habits and person is that of a prospective useful and prosperous citizen, from whom the mother, but for his taking off, would have received assistance greater probably, than has been given her. In Railroad Company v. Kindred, 57 Texas, 503, after an examination of the authorities, it is assumed that "the damages in such cases are essentially indefinite, hence the law furnishes no definite measure therefor."

Finding no error in the record, the judgment below will be affirmed.     *Affirmed.*