**HINES, Director General of Railroads, v. WILSON. (No. 6225.)**

(Court of Civil Appeals of Texas. Austin. Oct. 13, 1920. Rehearing Denied Nov. 24, 1920.)

Railroads ☞350(21) — Contributory negligence of automobile passenger held jury question.

Contributory negligence of one riding in an automobile struck by a train *held* a question for the jury, under the evidence.

Appeal from District Court, Milam County; John Watson, Judge.

Suit by J. B. Wilson against W. D. Hines, federal Director General of Railroads. From judgment for plaintiff, defendant appeals. Affirmed.

Chambers & Wallace, of Cameron, and Henderson & Ranson, of Bryan, for appellant.

Robt. M. Lyles and R. B. Pool, both of Cameron, for appellee.

KEY, C. J. This is a damage suit, the injuries complained of having resulted from a collision of an automobile in which the plaintiff, Wilson, was riding and a train on the International & Great Northern Railroad, where the railroad track crosses Main street in the town of Thorndale. The plaintiff charged in his petition that the employés who were operating the train on the occasion in question were guilty of negligence in several different respects, which charge was denied by the defendant's answer, and a plea of contributory negligence was interposed.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The case was submitted to a jury upon special issues, each and all of which were decided in favor of the plaintiff, and upon such verdict a judgment for $15,000 was rendered for the plaintiff; and the defendant, who had charge of and was operating the International & Great Northern Railroad, has appealed.

The several findings of the jury are supported by testimony, and are adopted by this court as findings of fact. The charge given by the court, including a special charge, requested by appellant, presented the case to the jury fairly and correctly, and no error was committed in the charge given, nor in the refusal of charges requested by appellant.

One of the main contentions of appellant's brief is that the plaintiff was guilty of contributory negligence as a matter of law, and that the court should have so instructed the jury, and directed a verdict in appellant's favor. The proof shows that, on the occasion in question, the plaintiff went to the town of Thorndale on horseback, for the purpose of getting Dr. Lee to come out to his home, two or three miles from Thorndale, to see a sick child of the plaintiff. Dr. Lee lived some distance west of Main street, and near the railroad track. There was a road between his house and the railroad track, which extended east into Thorndale. It was agreed that Dr. Lee was to ride the plaintiff's horse to see the sick child, and as he was starting off Dr. Crockett came by in a Ford car, on his way to Thorndale, and, at the request of Dr. Lee, he allowed the plaintiff to get in his car and ride with him.

In addition to this statement, we copy from appellee's brief the following substantially correct statement:

"Dr. R. H. Crockett testified: 'I had occasion to undertake to cross the International & Great Northern crossing on Main street that day. I was traveling in a Ford automobile. It was a one-seated Ford roadster. Mr. J. B. Wilson was riding with me in the car. I took Mr. Wilson in the car with me at Dr. Lee's residence some 400 or 500 yards west of Main street crossing where the accident occurred. When plaintiff got into my car with me, we were traveling east along there at Dr. Lee's house along the road running parallel with the railroad track. * * * I undertook to cross the railroad at Main street crossing about 400 or 500 yards east of Dr. Lee's house. I did not get across the railroad track safely. I was struck by an incoming freight train; at least, the car was struck that I was in. I was thrown violently from the car and partially stunned. * * * I heard some cries of pain, and at the time I heard it I took it to be Mr. Wilson. I know his voice. * * * I recall some structures there. Those buildings obstructed the view of the railroad very much. As I approached the crossing, * * * I slowed almost to a stop and looked and listened. I did not see the train at all. I heard the train just a second before I was hit. I brought my car almost to a standstill before I undertook to cross the railroad. * * * I was running about 12 miles an hour, and after I made the turn I slowed up, and when I got somewhere within 50 feet of the main line I almost stopped. I did not hear any train when I was up at Dr. Lee's. When I was within 50 feet of the track I looked in both directions. At that time there were some freight cars there and I could not see up the track at all. I could not see anything but the freight cars. I remember that very clearly. Those freight cars to the best of my knowledge were on the second line of switches. * * * The cars extended right down to the street on each side practically the width of the street between the cars. * * * I heard the roar of the train just about the instant it struck me. * * * I realized that the train was going to hit me just about like this (snapping his fingers). I heard the roar and it hit me; you might say at the same instant. I did not hear any bell ringing and did not hear any whistle. My hearing is good and has been all the time. * * * I saw Mr. Wilson lean forward as though he was trying to see a train. I asked Mr. Wilson to look for a train, and he then leaned forward. There was no passenger train due at that time. * * * To the best of my memory it would have been two or three hours before a passenger train was due there. The train that struck me was not a regular train; it was an extra.'

"Appellee, J. B. Wilson, testified: 'I took my horse up there and left him there (at Lee's residence). Dr. Lee was ready to go, and he got on the horse and started off, and just as he started Dr. Crockett came along in his car, and Dr. Lee hollered at him to stop, and I knew he wanted me to ride up with Dr. Crockett to town, and I hollered at Dr. Lee that I had rather walk, but Dr. Crockett stopped his car, and I went and got in the car with him, and Dr. Lee started out to my house. That is how I came to be in the car with Dr. Crockett. * * * I got in the car in front of Dr. Lee's house. We went on down the road toward Main street. * * * The road (indicating road on map) runs down parallel with the railroad track and goes into Main street. It is on the north side of the railroad. Dr. Crockett was driving the car. I did not have a thing to do with the driving of the car. * * * The car I was riding in belonged to Dr. Crockett. * * * As we approached the railroad, we had come from the west or right down the road from towards Taylor. And as we turned into the railroad and I was looking east for a train and we got a certain distance from the track, then I looked to the west; looked west, and when I looked west I was looking around something, but I bent over in my seat. I recollect that I stooped over and was looking around something, and I do not know what it was, and I did not know any more about it. I have no recollection at all about what it was. I know I was trying to look around something, but I had looked east. There was nothing in the car to keep me from seeing. The curtains were up, but it was torn so bad that I got in the car without having to undo that. It was torn up pretty bad. I could see out plain enough. In fact, my best recollection about the curtain is that it was practically torn up.

\* \* \* I listened and I looked at the crossing. I was more cautious to look east than I did west, for we had come from the west. I had come from the west in the car. While coming from the west I had not seen nor heard any train. \* \* \* I knew there were no passenger trains due at that time. I did not know of any other train likely to come through at that time. \* \* \* If I seen the train at all, it was just a second before it hit me. I am satisfied when I looked west I seen the train, but it was just a second and it was all over with me. \* \* \* I am satisfied when I looked I was bound to see it. I leant over and seen it. I was struck in a stooping position, sorter stooping over; had never straightened back up. I did not hear any signals at all, no whistle blowing or bell ringing. My hearing was good and always has been good. I have no recollection about anything after the train struck me.'

"The evidence for appellee shows that the train approached the crossing at a speed variously estimated (by those who would undertake an estimate) at from 25 to 40 miles per hour. From 30 to 40 miles seems to have been the consensus of opinion. J. J. Elliott of Thorndale, a witness for appellant, who had had 13 years' experience as brakeman, said the speed, in his opinion, was not less than 30 miles and 'probably more.'

"Lee Reynolds, a witness for appellee, who had had experience as fireman, first said he could not tell about the speed of the train because 'it was running so powerful fast.' Later he made the estimate at 35 or 40 miles. The finding of the jury that the train was negligently operated at an excessive speed is not challenged by appellant.

"As said in our preliminary statement, and as found by the jury, and which findings are not questioned by appellant, it is further shown by the witnesses for appellee, about 20 in number, some of whom were altogether positive, that the proper signals were not given as the train approached; that the bell was not rung; that the whistle was not sounded but once, which occurred at some point west of the Davis crossing; and that this crossing was practically ½ mile, 2,546 feet, from Main street crossing. Dr. Lee was traveling west on horseback meeting the train and was in a position to know absolutely where the whistle was blown, and he said it was blown for the Davis crossing. 'It was then beyond the Davis crossing.' \* \* \*

"The positive testimony of 10 witnesses, which it is deemed unnecessary to quote at length, shows that, in addition to the line of buildings along the north side of the right of way, box cars were located on one of the sidings north of the main line and west of the crossing and between the main line and the cotton platform, as charged in the petition.

"It is undisputed that there were cars to the east of the crossing. Appellant's station agent says there were as many as 10 on the north (meaning east) 'toward Rockdale' and 5 on the south side, though he takes issue with the other witnesses as to the location of the cars on the south side. We have quoted elsewhere the testimony of Dr. Crockett who was driving the automobile, to the effect that 'the cars extended right down to the street on each side, practically the width of the street between the cars.' "

We hold that the question of contributory negligence was a question of fact to be submitted to the jury. Trochta v. Ry. (Tex. Com. App.) 218 S. W. 1038; Boyd v. Ry., 101 Tex. 411, 108 S. W. 813; Brown v. Griffin, 71 Tex. 654, 9 S. W. 546; Ry. v. Lee, 70 Tex. 496, 7 S. W. 857; Ry. v. Longino, 103 Tex. 250, 126 S. W. 8; Moye v. Ry. (Tex. Com. App.) 212 S. W. 471; Kirksey v. Southern Traction Co., 217 S. W. 139; Ry. v. Tinon, 117 S. W. 936; Ry. v. Shelton, 52 Tex. Civ. App. 437, 115 S. W. 877; Hovey v. Saunders, 174 S. W. 1025; Ry. v. Eddleman, 175 S. W. 775; Dalwigh v. Ry., 42 S. W. 1009; Frugia v. Ry., 36 Tex. Civ. App. 648, 82 S. W. 814; Ry. v. Butts, 62 Tex. Civ. App. 539, 132 S. W. 88; Schaff v. Gooch, 218 S. W. 783; Ry. v. Morgan, 220 S. W. 281.

The other questions presented in appellant's brief are neither new nor novel, and, while they have been considered and decided against appellant, it is not deemed necessary to discuss them in this opinion.

No reversible error has been shown, and the judgment is affirmed.

Affirmed.