

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable H. Pat Edwards
Civil District Attorney
Dallas, Texas

Dear Sir:

Opinion No. O-5352
Re: Condemnation by Dallas
County of an easement
over railroad right-of-
way for the purpose of
extending a regularly
dedicated public county
road across same, and
related questions.

We acknowledge receipt of your recent request for
an opinion by this department relating to the four follow-
ing submitted questions:

1. Can Dallas County condemn an easement
over a railroad right-of-way when deemed neces-
sary and so declared by an order of the commis-
sioners' court for the purpose of extending a
regularly dedicated county road across said
railroad right-of-way, to connect the same with
another public road?

2. Does the fact that four railroad tracks
will have to be crossed interfere with or prevent
such a condemnation?

3. Can such a condemnation be had for, and
restricted to, pedestrian traffic only?

4. If a railroad company should voluntarily
grant a public easement over or under its right-

Honorable H. Pat Edwards, Page 2

of-way connecting two public roads, which by the express term of the dedication is restricted to pedestrian use only, by the public in general, and which dedication is further conditioned upon the counties constructing and maintaining same, and the commissioners' court is of the opinion that such passage will be of public benefit and that a necessity exists for such passage for public convenience and safety, can Dallas County legally use the Road & Bridge Fund or the General Fund for the construction and maintenance of same?

From your letter dated May 28, 1943, we quote the following information relative to the question submitted:

"The facts are as follows: The land to be condemned by Dallas County is a part of a railroad right-of-way and road bed, it will traverse four railroad tracks; the same is situated in Dallas County in a community which is not an incorporated city, village or town; the easement desired is for the purpose of connecting two previously dedicated and established public roads."

An examination of the laws of Texas reveals that both general and special laws are available to the Dallas County authorities named therein for the purpose of acquiring necessary property to be used in the establishment and opening of public roads and highways.

Title 116, Chapter 2, Revised Civil Statutes, Articles 6702 6716 in Vernon's Annotated Civil Statutes, a general law, sets out one procedure for the condemnation of property for public road purposes. From Article 6703, we quote in part as follows:

"The commissioners' court shall order the laying out and opening of public roads when necessary, and discontinue or alter any road whenever it shall be deemed expedient . . . . ."

Article 3264 et seq., V.A.C.S., the most common of the general laws on condemnation, provides under Article 3264a, in part, as follows:

"The right of Eminent Domain is hereby conferred upon counties of the State of Texas for the purpose of condemning and acquiring land, right-of-way or easement in land, private or public, except property used for cemetery purposes, where said land, right-of-way or easement is necessary in the construction of jails, courthouses, hospitals, delinquent and dependent schools, poor farms, libraries, or for other public purposes, where such purpose is now or may hereafter be authorized by the Constitution or statutes of this state.

"All such condemnation proceedings shall be instituted under the direction of the commissioners' court, . . . ." (Underscoring ours)

Articles 1150 and 1149, V A.C.S. provide yet another method by which property necessary for the construction of public roads may be acquired by condemnation. From Article 1149 we quote in part as follows:

"Any town or village in this state, incorporated under this chapter or by special charter, shall have the right, and they are hereby empowered, to condemn the right-of-way and roadbed of any railway company whose roadbed runs within the corporate limits of such town or village, when deemed necessary and so declared, by a majority vote of the Board of Aldermen, for the purpose of opening, widening or extending the streets of such town or village; provided, there are less than four railroad tracks. . . . ."

And Article 1150, we quote in full as follows:

"County commissioners shall have the right, upon petition of twenty freeholders of any community, or unincorporated town or city, to condemn

road beds of railroads for the same purpose
mentioned in the preceeding article."

Acts 1941, 47th Legislature, Regular Session, Chapter 458, House Bill 961, is a special law enacted to create a more efficient road system for Dallas County, portions of which special law, pertinent to this opinion, we quote as follows:

"Sec. 6. The commissioners' court in said county shall have the right to condemn any property necessary for the opening, widening, or maintaining of a public road . . . . .

" . . . . .

" . . . . . provided, however, the provisions hereof are cumulative of the present laws relating to condemnation and the commissioners' court may proceed under the provisions hereof or under the provisions of the General Laws with reference to the condemnation of right-of-way by railroads or by jury of view.

"Sec. 24. The provisions of this act are and shall be held and construed to be cumulative of all General Laws of this state on the subject treated of and embraced in this act when not in conflict herewith, but in case of said conflict, in whole or in part, this act shall control Dallas County; . . . ."

In the light of the statutes hereinabove enumerated, it is the opinion of this department that Dallas County may condemn an easement over a railroad right-of-way when deemed necessary for the purpose of extending a regularly dedicated county road across said railroad right-of-way, in accordance with the condemnation procedure set out in Article 6702 et seq.; in Article 3254 et seq., V.A.C.S.; or in Dallas County Special Road Law herein referred to as House Bill 961. The provisions of these statutes confer the right of Eminent Domain on the Dallas County commissioners to condemn any property necessary for a public county road purpose. No attempt is therein made to limit the commissioners' power to condemn

railroad right-of-ways. That the county has the option to proceed under the provisions of either of these statutes is, we think, settled under the decision and cases set out in Tarrant County vs. Shannon, 129 Texas. 264, 104 S.W. (2d) 4, reversing the Court of Civil Appeals, 99 S.W. (2d), 954, which expressly overruled O'Keefe vs. Hudspeth County, et al., (Tex. Civ. App.) 25 S.W. (2d) 625, containing expressions to the contrary, and which ruling was followed in Doughty vs. DeFee, 152 S.W. (2d) at page 410. Our answer to your first question is, therefore, in the affirmative.

By the provisions of Article 1150 and 1149, V.A. C.S., the right of the county commissioners to condemn railroad right-of-ways is limited to the condemnation of right-of-ways which have less than four railroad tracks. The problems which may confront the commissioners' court, should it elect to enter proceedings in accordance with said Articles 1150 and 1149, would not arise, if it elected to proceed under the other general statute or special law herein set out. Should Dallas County elect to institute condemnation proceedings under its special road law, for instance, then the fact that the four railroad tracks will have to be crossed will not interfere with or prevent such a condemnation for the reason that under the special law any property deemed necessary by the commissioners may be condemned for public road purposes. In the case of Hill County vs. Bryant and Huffman, 118 Texas, at page 365, the Supreme Court held that a special road law supersedes the general road laws where they conflict with said special law, and the courts are required to take notice of the special law. See also Kansas C. & G.R.R. Co. vs. Grayson County, (Civ. App.) 5 S.W (2d) 542. Our answer to your second question is, therefore, in the negative.

With regard to your third question, we think the proper answer thereto depends upon the power, if any, in the county commissioners to restrict the use of any public road for pedestrian purposes only. The commissioners' court is a creature of the State Constitution, and its powers are limited and controlled by the Constitution and the laws as passed by the Legislature. Article 5, Section 18, Constitution of Texas; Baldwin vs. Travis County, 88 S.W. 480; Commissioners' Court vs. Wallace, 15 S.W. (2d) 535.

Honorable H. Pat Edwards, Page 6

Articles 2351 through 2372h, V.A.C.S , as amended, set out the various powers and duties of the commissioners' court and are too lengthy to set out in this opinion. However, it should be pointed out that none of the above mentioned articles directly or indirectly give the commissioners' court the power to restrict the use of any public road to pedestrian traffic. Within certain constitutional limitations, the Legislature has exclusive control over public roads and highways in this State. The right to establish and build highways rests primarily with the Legislature, such power may be delegated to some other agency as it may determine. State vs. Hale, 146 S.W. (2d) 731. It is now well settled that public roads belong to the State and that the State has full control and authority over the same. Travis County vs. Trogden, 88 Tex. 302, 31 S.W. 358. It is also a well established rule that the commissioners' court may exercise only those powers specifically designated by the Constitution or the statute. The fact that the Legislature has exclusive control over public roads and highways in the State and has not seen fit to grant the said county authorities the power to limit or control the use of its public county roads compels us to the conclusion that the county commissioners' court does not have the power or authority to limit the use permanently of any of its public county roads or portions thereof to pedestrian use only. Our answer to your third question is, therefore, in the negative.

With regard to your fourth submitted question, the railroad company being owner of the right-of-way in question could certainly grant a public easement crossing over same to be used for pedestrian purposes only. Furthermore, Article 1151, V.A.C.S., places a duty on the railroad to keep that portion of its road bed and right-of-way over or across which any public street of any incorporated village or town may run in proper condition for the use of the traveling public. But whether or not the county Road and Bridge Fund may be used to construct a passage way to be used for pedestrian purposes only depends, we think, on whether the so-called passage way so restricted would come within the definition of a public road. The cost of construction of county public roads and bridges is authorized and expendable out of the county Road & Bridge

Fund. Will this proposed easement restricted to pedestrian use only, be it acquired by condemnation or dedication, constitute in fact a part or portion of a public road?

From Bradford vs. Moseley, 223 S.W. 171, 173, decided by the Commission of Appeals of Texas, Section B, we quote:

> "What is a public road is in a measure dependent on the fact of each particular case, but the character of a road does not depend on its length, nor upon the place to which it leads nor is its character determined by the number of people who actually travel upon it. Decker vs. Monard (Civ. App.) 25 S.W. 728; Elliot on Roads Paragraph 1-7. A road may be established which is a cul-de-sac id. A road open to the public is a public road, though one person may be most benefited by it. Galveston, etc. vs. Baudat, 18 Tex. Civ. App. 595. It is a highway if there is a general right to use it for travel, and if it is open to the use of all people. Elliot on Roads Paragraph 1-3; Sumner, etc., vs. Interurban, etc., 141 Tenn. 493, 213 S.W. 412."

We cite also Missouri Pac. R.R. vs. Lee, 7 S.W. 857, 70 Tex., at page 500 for a definition of similar nature.

In Words & Phrases, Permanent Edition, volume 35, page 323, we find the following:

> "The test as to whether or not a road is a public road is not simply how many people actually use it, but how many may have a free and unrestricted right in common to use it. If it is free and common to all citizens, then, no matter whether it is or is not of great length, or whether it leads to or from a village, city, or hamlet, or whether it is much or little used, it is a 'public road.' Heninger vs. Perry, 47 S.E. 1013, 1014, 102 Va. 896, quoting Elliott Roads & Streets, paragraphs 11, 192."

And on page 322 of the same volume we find the following definition:

> "A 'public road' is a way open to all
> the people without distinction for passage
> and repassage at their pleasure, being a
> public thoroughfare.  Civ. Code Article 705.
> Galloway vs. Wyatt Metal & Boiler Works,
> 181 So. 187, 189 La. 837."

In Sumner County vs. Interurban Transportation Company, 141 Tenn. 493, 213 S.W. 412, as set out in 5 A.L.R. 765, at page 767, wherein it was held that a Tennessee County court was without authority to restrict the size and weight of vehicles which shall be used on public county roads, we find the following definition:

> "Roads belong to the public, and the coun-
> ty court holds them in trust for the public and
> while it is proprietor for the premises of its
> trust, it is not proprietor in the sense that
> it is the owner of the road against the public,
> or any member thereof.  A public road is a way
> open to all the people, without distinction,
> for passage and repassage at their pleasure.
> Definition in other terms have been given, but
> they mean substantially the same as the one
> just stated.  The authorities make it clear that
> any road which is not for the use of the people
> is not a public road; the fact that it is for
> the benefit of the public destroy the thought
> that there can be a private ownership of the
> road.  (Cases cited)  This being the established
> nature of the public road, the county court
> would have no power to exclude any member of
> the public from its reasonable use without leg-
> islative authority.
>
> "  . . . .
>
> "The Legislature, as the constitutional
> representative of the public, has the power to
> levy any reasonable condition upon members of

777

the public for their use of the public roads; but the county court, without express authority, has not such power. It cannot take such action as proprietor, and as a county court it has no power to legislate. The manner of its discharge of its trust comes from the Legislature.

"It is well settled that every member of the public has the right to use the public road in a reasonable manner for the promotion of his health and happiness. Such use, however, is restricted to a use with due care and in a reasonable manner."

As we interpret the authorities above quoted on the definition of a public road, it is our opinion that the desired restricted easement proposed to be acquired by Dallas County for pedestrian use only would not constitute in itself a public road or a part or portion of a Dallas County public road. The county Road and Bridge Fund being expendable only for county public roads and bridges, it would follow that this fund may not legally be used for the construction of any public improvements other than public roads and bridges. Furthermore, in the event the construction of the desired passage way would in fact amount to the construction of a permanent improvement, the county General Fund could not legally be expended therefor, but rather the procedure incident to the use of the county Permanent Improvement Fund would have to be resorted to for the payment of the cost of said permanent construction. The absence of facts concerning the type of structure contemplated prevent further discussion of this matter.

With reference to your fourth question, we think it should also be pointed out that whether or not a railroad company may voluntarily grant a public easement over its right-of-way which would involve the construction of an over-pass or an under-pass, over or under its right-of-way, depends on whether the railroad company owns its right-of-way in fee simple absolute. This department has held in its opinion No. 0-1110 that although the county or state

778

may have a dominant easement in the road right-of-way, the title to the land and all the profits therefrom, not inconsistent with and subject to the easement, remain in the owner of the soil.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Chester E. Ollison*

Chester E. Ollison
Assistant

CEO:ff

OK
C.C.R.

APPROVED JUL 19, 1943

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY *Bob*
CHAIRMAN