GULF, C. & S. F. RY. CO. v. BRYANT.
(No. 7595.)

(Court of Civil Appeals of Texas.  Galveston.
May 29, 1918.  Rehearing Denied
June 20, 1918.)

HIGHWAYS ⚖⇒7(1) — RAILROAD RIGHTS OF
WAY—PRESCRIPTION.

Where roadway on railroad right of way
outside the poles carrying telegraph wires was
used generally by the public for hauling and
travel for more than 20 years to the knowledge
of the railroad, and was worked by the citizens,
there was a public road by prescription.

Appeal from District Court, Burleson Coun-
ty; R. J. Alexander, Judge.

Action by I. B. Bryant against the Gulf,
Colorado & Santa Fé Railway Company.
Judgment for plaintiff, and defendant ap-
peals.  Affirmed.

Terry, Cavin & Mills and Jnó. G. Greggs,
all of Galveston, and Bowers & Bowers, of
Caldwell, for appellant.  W. M. Hilliard and
A. B. Gerland, both of Caldwell, for appellee.

PLEASANTS, C. J.  This is a suit for an
injunction and for damages, brought by ap-
pellee against appellant.  The petition al-
leges:

That plaintiff owns and resides upon a tract
of one acre of land situated in a suburb of the
town of Caldwell in Burleson county known as
West Caldwell.  That plaintiff's said home ad-
joins the right of way of defendant company for
a distance of about 100 yards, plaintiff's premis-
es being west of said right of way and fronting
thereon.  That some distance south of plaintiff's
premises a public road known as the Caldwell
and Brenham road crosses the defendant's rail-
road, and that another public road known as the
Caldwell and Deanville road crosses defendant's
railroad about one-third of a mile north of plain-
tiff's home.  That for more than 30 years prior
to the institution of this suit there had been a
road along defendant's right of way in front of
plaintiff's premises, connecting the two public
roads before mentioned.  That said road along
the right of way had been used by the public
generally, continuously, and openly as a road for
travel and traffic in buggies, wagons, and vehi-
cles of all kinds.  "That during all of said time
the road was always kept in good condition for
travel.  That said use of said road as mentioned
was during said time continuously of a nature
and character reasonably calculated to put de-
fendant on notice that said road was being so
used adversely to the rights of the defendant.
That defendant had notice of the fact that said
road was, during all of said time mentioned, so
used by the plaintiff particularly and the pub-
lic generally, adversely to its rights in said
land over which said road was and run.  That
at the time plaintiff purchased his said home,
because of defendant's conduct and attitude to-
ward the use of said road by the public in the
manner above set out, he had reason to believe,
and did believe, that the defendant regarded
that the public had acquired an easement in said
road, and that said road had become a public
road by prescription, and that the defendant
would not close said road."  "That on or
about the 1st of November, 1915, defendant
by force unlawfully entered plaintiff's home,
and removed and tore down his northeast
boundary line fence, same being the division
fence between the plaintiff's said land and home
and the defendant's right of way, and a fence
that plaintiff had placed there in fencing his
said home over 10 years prior to said date, No-
vember 1, 1915, and destroyed his said fence.
That the defendant built a cattle guard just
north of where the Caldwell and Brenham road
crosses defendant's said right of way and rail-
road track, and built a strong four-wire fence
from said cattle gap to both fences inclosing its
right of way; built said fence from said cattle
gap to its west boundary line; thence up its
right of way following its western boundary line
to plaintiff's east corner; thence continuing fol-
lowing plaintiff's east boundary line, same be-
ing defendant's west boundary line, the whole
distance between plaintiff's land and defendant's
right of way; thence continuing up defendant's
right of way following its west boundary line to
the point where the Houston & Texas Central
Railroad track crosses under the defendant's
railroad track.  That said road leading by the
home of plaintiff is thereby fenced in and stop-
ped up at both ends, and that said fence com-
pletely incloses plaintiff with a strong four-wire
fence, without any gate or other means of en-
tering or leaving his said home.  That by the de-
fendant so fencing in said road and plaintiff's
said home, the plaintiff's outlet of ingress and
egress to and from his said home was com-
pletely destroyed."

Plaintiff further alleges that by the wrong-
ful act of defendant in removing plaintiff's
fence and inclosing said public road and thus
depriving plaintiff of a way of ingress and
egress to and from his home, plaintiff has
suffered damage in the sum of $1,600.  The
prayer of the petition is for a mandatory
injunction, requiring the defendant to remove
the fences built by it across said road and to
open and restore said road as a public high-
way for the use of plaintiff and the public
generally, and for recovery of the damages
claimed in the petition.  The defendant an-
swered by general demurrer and general
denial.  The trial in the court below without
a jury resulted in a judgment in favor of
plaintiff, granting a mandatory injunction,
requiring defendant to leave open a road 20
feet in width along defendant's right of way,
connecting the two public roads mentioned
in the petition, and awarding plaintiff dam-
ages in the sum of $105.

The following facts were found by the trial
court:

"I find defendant's right of way to be 100
feet wide, extending 50 feet on either side from
center of track or roadbed; I find that for more
than 20 years that a road was used by the pub-
lic generally from the Brenham and Caldwell
road to Deanville road near oilmill or cotton
platform; that on the west of said road the
boundary was defined by a fence on west line of
said defendant's right of way, and that the rail-
road bed, beginning at about 2 feet at or near
crossing at Caldwell and Brenham road, and in-
creasing in height until same was 5 to 6 feet in
front of plaintiff's premises; that this roadbed
was about 30 or 35 feet from the fence, and that
there were telegraph poles about 100 feet apart
25 feet from the center of track; that this road
was confined between the roadbed of defendant
and such fence; that the road was at or in close
proximity to the west line of defendant's right
of way, and situated thereon, was 20 feet wide,

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and ran with line of said right of way; that sometimes when muddy that there would be travel between the telegraph poles and roadbed, but that such was sporadic. I find that this road was used daily, a great number of wagons and other vehicles passing over the same, up to 1912, and has been so used by the public generally for more than 20 years and by the plaintiff for between 9 and 10 years, and was a public road by prescription, and same was used in hauling cotton, brick, wood, lumber, and other commodities; that it was traveled and used by the plaintiff in going to and from town to depot, lumber yards, and other points in town, also in going to his school and church; that for 10 years it was the best road, and a large amount of travel from the Brenham and Caldwell road traveled this road. I find that this road was worked at times and kept in condition by the citizens, but there is no evidence that it was ever worked or claimed by the city of Caldwell or by the commissioners' court prior to incorporation of city of Caldwell."

These findings are all amply supported by the evidence. We think these facts show more than a mere permissive use of appellant's uninclosed right of way. The long-continued and uninterrupted use by the public as a roadway of that portion of appellant's right of way lying between the fences on the west line of the right of way and the row of telegraph poles along the west side of the railroad track shows an exclusive appropriation of the land for use as a public road of that portion of the right of way, and appellant's long acquiescence in such exclusive use by the public has matured the public's right in such road by prescription.

The undisputed evidence shows that while this road was never declared a public road by the county or town authorities, nor kept in condition or worked by any public authority, it was worked and kept in condition by the citizens who used it, and that for more than 20 years it has been a much-used public thoroughfare. It seems to us that if this evidence does not show a sufficiently definite use of a roadway by the public to establish the right in the public by prescription to such roadway, no such prescriptive right could ever be established. Hall v. City of Austin, 20 Tex. Civ. App. 59, 48 S. W. 53; Railway Co. v. Baudat, 21 Tex. Civ. App. 236, 51 S. W. 541.

Whatever may be the rule in other jurisdictions, the Baudat Case above cited holds that the right to a roadway along the right of way of a railway company can be acquired by the public by prescription. We think this ruling is sustained by the holding of our courts that title to the unoccupied portions of a railroad right of way may be acquired by exclusive adverse possession under our statutes of limitation.

The conclusions above expressed require the affirmance of the judgment of the court below, and render a detailed discussion of the several assignments of error presented in appellant's brief unnecessary.

Affirmed.