**CITY OF DUBLIN et al. v. BARRETT et al.**
**(No. 6772.)**

(Court of Civil Appeals of Texas. San Antonio. May 24, 1922. Rehearing Denied June 21, 1922.)

1. **Municipal corporations** ⬥648—Mere use, and not frequency thereof, alone necessary to constitute a way a public way by prescription.

Use is the sole test in constituting a way into one which would ripen into a public way by prescription, and the use is merely as of a highway, and it is not a question of the frequency of the use.

2. **Municipal corporations** ⬥648—Common use of way over railroad for 20 years established public way by prescription.

Free and common use of a way over a railroad for 20 years rendered it a public highway by prescription, under Rev. St. art. 6485.

3. **Dedication** ⬥20(6), 35(3)—Facts held to show dedication of highway over railroad.

Where city graded street up to right of way, and railroad kept crossing in repair and constructed a crossing sign, and this continued for nearly 30 years, there was a dedication and acceptance.

4. **Injunction** ⬥126—In suit to restrain closing of street, burden rested on city and railroad to show that people voted to close street.

Where public highway over railroad was created both by prescription and dedication, the burden rested on the city and railroad, in an action by property owners to restrain the closing of the crossing, to show that the people of the city had voted to close the crossing, or under the provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 854c, had conferred the power on the city council or other form of city government; no presumption arising that the city or railroad had such authority.

Appeal from District Court, Erath County; J. B. Keith, Judge.

Suit by Luke Barrett and others against the City of Dublin and another. Judgment for plaintiffs, and defendants appeal. Affirmed.

Allen Beadel and Hickman & Morrow, all of Dublin, and Goree, Odell & Allen, and Ernest May, all of Fort Worth, for appellants.

Chandler & Pannill, of Stephenville, for appellees.

FLY, C. J. Luke Barrett, J. Lee Carlisle, A. W. Whitfield, R. L. Lucas, and George W. Welch, appellees herein, sought to restrain the city of Dublin and the Fort Worth & Rio Grande Railway Company from closing a crossing over the line of railway in said city, which crossing connects Sheridan and Bennett streets, being in fact the same street called by one name on the east side of the right of way and another name on the west side. It was alleged that the city had passed an ordinance closing the crossing, and that the railway company had closed the crossing, which had been in use by the public for more than 20 years, and that appellees were owners of property near said crossing. The court instructed a verdict for appellees, and perpetually enjoined appellants from obstructing the crossing in question over the right of way between Bennett and Sheridan streets. The uncontroverted evidence showed that the crossing had been used by the general public for over 20 years, had during that time been kept in order by the railway company, which had erected at the crossing a sign naming it a railroad crossing. There was no practical crossing of the railroad within the city limits from the two streets towards the north, and it was three blocks to the south of the two streets to another crossing. The crossing in controversy is used by numbers of people in reaching their churches, and is much used by children in reaching their schools. It is recited in the municipal resolution closing the crossing that it is used by the general public. The city has graded and cared for both Sheridan and Bennett streets up to the right of way of the railway company, and the two streets are among the best graded streets of the city. The crossing was constructed and always kept in good order by the railroad company.

[1, 2] That the crossing was used as a part of the two streets by the general public for over 20 years is shown by the uncontradicted evidence, and that use was at all times acknowledged and acquiesced in by appellants, and the city graded the streets and kept them in good repair to the crossing, which was kept in order by the railroad company, and recognized it as a railroad crossing. Use is the sole test in constituting the way into one which would ripen into a public highway by prescription, and the use is merely as of a highway, and it is not a question of the frequency of the use. If it is free and common to all who have occasion to use it, it is a public highway. Elliott, Roads and Streets, § 197. As said in Speir v. Utrecht, 121 N. Y. 420, 24 N. E. 692:

"Although the owner of land may not dedicate it for a public highway, and may not intend or assent that it shall become such, yet if he permits it to be used in the way just indicated for twenty years it would be deemed a public highway, and he will not be permitted to question the public right."

The city worked Bennett and Sheridan streets to the line of right of way, just as it did all other streets crossing railroad lines. This was all the work required of the city, and the duty to construct the cross-

ing devolved upon the railway company. R. Stats. art. 6485. The railroad company assumed that duty, and complied with it for nearly 30 years, and the general public used it as a crossing during all those years.

[3] The facts not only show a right in the public by prescription, but by dedication and acceptance. Greenleaf on Ev. § 662; Elliott, Roads and Streets, § 147; Hall v. City of Austin, 20 Tex. Civ. App. 59, 48 S. W. 53; Railway v. Baudat, 21 Tex. Civ. App. 236, 51 S. W. 541; Railway v. Bluitt (Tex. Civ. App.) 204 S. W. 441; Railway v. Bryant (Tex. Civ. App.) 204 S. W. 443. In the Baudat, Bluitt, and Bryant Cases, it was held a public road may be acquired across or along a railroad right of way by prescription.

[4] It is not pretended that any notice was given by the city of its intention to close the street crossing over this railway right of way, nor was that question presented to a vote of the people of the city, as required by article 854b, Vernon's Sayles' Ann. Civ. St. 1914. The burden rested on appellants to show that the people of the city had voted to close the street or, under the provisions of article 854c, had conferred the power on the city council or other form of city government. No authority whatever was shown for closing the street. No presumption would arise that appellants had such authority.

The railway company not only knew that the streets on either side of the crossing were being worked up to its line, and that the public used the crossing as a passageway, but it acquiesced in such use, and constructed and kept in repair this crossing, with the same care that it did its other crossings, for nearly 30 years. Its acts showed a clear and unequivocal dedication of the crossing to the public use. If the acts of the railway company in this case did not clearly and indisputably show a dedication, no such dedication of property to public use can be established.

It would seem to be something of a habit of the city of Dublin to attempt to close its streets, for we see in the case of Stevens v. Dublin (Tex. Civ. App.) 169 S. W. 188, it closed a street, alleging in that case, as in this, that its great solicitude for the welfare and safety of its school children had induced its action. It failed to close the street in that instance, as in this. The court in declaring that the city was not authorized by law to close the street stated:

"In the case as here found the danger is to the school children, and arises only by their own seeking, so to speak, while trespassing upon a street which has been dedicated to other uses for the benefit of the general public. The street as such is not dangerous, and the general public is only affected indirectly by the supposed danger. Nor does it appear that reasonable regulations on the part of the proper authorities cannot be adopted that will prevent the children from seeking places of danger, and at the same time preserve the rights of the public and of abutting owners to the use of the street."

The city, in the present case, alleged that the closing was done for the safety of children, and under the same plea every street crossing a railroad in the city could be closed, and the two parts of the city absolutely isolated one from the other. Probably the rights of the public might be better conserved by compelling the railway corporation to exert itself to protect those crossing its right of way on a public highway. The railway company, in its answer, clearly shows that the ordinance was passed, not for the safety of children, but for the convenience and benefit of the railroad corporation, that desired to appropriate the crossing to its own use and benefit, without regard to the convenience and interests of the people of the city.

The points raised by the assignments of error are without merit, and the judgment is affirmed.