**HOUSTON E. & W. T. RY. CO. v. SHERMAN et al.   (No. 1679.)**

Court of Civil Appeals of Texas.   Beaumont.
Aug. 2, 1928.

Rehearing Denied Oct. 10, 1928.

244

Garrison & Watson and Baker, Botts, Parker & Garwood, all of Houston, for appellant.
Smith, Combs & Matthews, of Liberty, for appellees.

O'QUINN, J. Mrs. Settie Sherman sued the appellant in her own right and as next friend of her seven minor children, Jefferson Sherman, Lillie Sherman, Addie Sherman, Madge Sherman, George Sherman, Dellia Sherman, and William Sherman, to recover damages for the death of J. S. Sherman, who was the husband of Mrs. Sherman and the father of said minor children, occasioned by the alleged negligence of appellant. The defendant answered by general demurrer, general denial, and a special plea of contributory negligence.

In their first amended original petition (that upon which they went to trial) appellees alleged that the crossing at which deceased was killed was a public road crossing. Appellant, in its answer, denied that said crossing was a public road crossing, but that in contemplation of law same was a private road crossing.

By supplemental petition appellees answered appellant's denial that the road in question was a public road, and alleged that said road was a public road by prescription and use, and that appellant opened said crossing across its railroad track, and for many years had maintained same for the use of the general public, had openly and notoriously permitted the general public to use said crossing with its knowledge and consent, and that appellant was estopped to deny the public character of said road crossing.

At the close of the evidence appellant requested a peremptory instruction in its favor, which was denied, and the case was submitted to a jury upon special issues, in answer to which they found (a) that the road where deceased was killed was a public road; (b) that the crossing where the accident occurred was being used by the general public with the knowledge and consent of the appellant prior to and at the time of the accident; (c) that the operatives of the train did not sound the whistle or ring the bell for said crossing, and that such failure to blow the whistle and ring the bell was negligence and a proximate cause of the injuries and death of deceased; (d) that the operatives of the train on the occasion in question failed to keep a proper outlook for deceased or other persons who might be on or about to go upon said crossing, and that such failure was negligence and a proximate cause of the injuries and death of deceased; (e) that the

engineer in charge of the train in question failed to use ordinary care to use all effective means in his power consistent with the safety of the train and passengers thereon to avoid striking deceased after he had discovered deceased and realized his peril, and that such failure was negligence and a proximate cause of the injuries and death of the deceased; (f) that deceased was not guilty of contributory negligence; and (g) assessed damages against appellant in the sum of $45,000, apportioned $24,000 to Mrs. Settie Sherman and $3,000 to each of the seven minor children. Upon these findings judgment was entered for the plaintiffs. This appeal is from that judgment.

Briefly stated, the facts show that deceased was killed on a road crossing of appellant's railroad by a collision between a Ford truck in which he was traveling and a west-bound passenger train. At the point where the accident occurred, the track ran almost north and south, and was straight for a considerable distance in each direction from the crossing. The deceased was traveling a road that ran practically parallel with the west line of the railroad right of way known as the Shepherd-Cleveland road. Appellant's right of way was fenced, and there was a crossing with gates opening on each side of the right of way, leading on and over the track. Deceased was traveling this road on the west side of the right of way going south. He turned almost at right angles through the west gate and on to the crossing, going east, and was struck by a passenger train and killed. The gates were kept closed and the deceased had to stop his truck outside the right of way at the gate and open the gate in order to cross the track. The nature of the dirt road and the crossing which was being traveled by deceased will be more fully stated and discussed later. The territory about the crossing was the ordinary East Texas wooded country, and there was a sharp contest as to whether there was anything to obstruct the view of the track in the direction from which the train was approaching. This will be more fully discussed later. It was a cloudy day and the wind was blowing from deceased toward the train described as a "typical March wind." Deceased was engaged principally in getting out timbers and car stakes; at the time he was killed he was going after a load of car stakes. The road which turned east from the Shepherd-Cleveland road and crossed the track where deceased was killed ran on east through the settlement on the east side of the railroad track and into what was called the Tarkington Prairie community, and persons living on that side of the track in the Tarkington Prairie community traveled this road over and across the railroad and went either south to Cleveland or north to Shepherd. It does not appear that there was any trading point on the east side

of the railroad. The crossing of the road and the gates were made and maintained by the appellant for the benefit of the general public, and had been in use for many years. The train was running very fast, 45 to 50 miles per hour—the engineer testified 48—and was running a few minutes late. The whistle was not blown nor the bell rung at any point for the crossing. The accident occurred about the middle of the afternoon.

The request for a peremptory instruction was based upon the contention of appellant (1) that the evidence was such that the jury could not legitimately find that the negligence of appellant in failing to ring the bell or blow the whistle proximately caused the death of the deceased, and (2) because it conclusively appeared as a matter of law that the deceased was guilty of negligence. Appellant's first, second, third, and sixth propositions are directed to these contentions.

That the bell was not rung and that the whistle was not blown for the road crossing, as required by article 6371, Revised Civil Statutes 1925, is admitted by appellant, but appellant insists that the road was not a public road, and therefore the crossing was not such as under the law required the bell to be rung or the whistle to be blown. The failure to ring the bell and sound the whistle makes appellant guilty of negligence per se, which, if same was a proximate cause of Sherman's death, rendered appellant liable, provided the road crossing was a public one, and provided further that deceased was not guilty of contributory negligence that was a proximate cause of his death.

The road was never laid out by the commissioners' court nor recognized as a public road by apportioning hands to work it. However, it was a settlement road leading across appellant's line of railroad from the east to the west, connecting with the Shepherd-Cleveland road, which ran practically parallel with appellant's line of railway on the west, and appellant constructed a crossing for the road, and in fencing its right of way fences through which the road passed over its track, and kept and maintained these gates and this crossing for the benefit of the public, and it was constantly used by the public in traveling from the settlements on either side of the line of railway and for hauling timber. This use of the road by the public and maintenance of the gates and crossing by appellant for the use of the general public had existed for some 20 years, and it was being so used and maintained at the time of the accident. The jury found, in answer to special issue No. 1, that the road was a public road, and, since the use of a road by the public is that which determines its character, we think the finding is amply supported. City of Dublin v. Barrett (Tex. Civ. App.) 242 S. W. 535; Galveston, H. & S. A. R. Co. v. Baudat, 21 Tex. Civ. App. 236, 51 S. W. 541, 543

(writ refused); Gulf, C. & S. F. R. Co. v. Bryant (Tex. Civ. App.) 204 S. W. 443; Bradford v. Moseley (Tex. Com. App.) 223 S. W. 171; Texas & P. Ry. Co. v. Anderson, 2 Willson, Civ. Cas. Ct. App. § 204; Missouri Pac. Ry. Co. v. Bridges, 74 Tex. 520, 12 S. W. 210, 15 Am. St. Rep. 856; Missouri Pac. Ry. Co. v. Lee, 70 Tex. 496, 7 S. W. 857; Houston E. & W. T. R. Co. v. Peterson (Tex. Civ. App.) 227 S. W. 747; Galveston, H. & S. A. R. Co. v. Eaten (Tex. Civ. App.) 44 S. W. 562 (writ refused).

But appellant says that deceased was guilty of contributory negligence as a matter of law, and therefore appellees were not entitled to recover. This contention is but the conclusion of appellant from the facts and circumstances given in the trial of the case. The question of contributory negligence was appropriately submitted to the jury, and they found against appellant's contention. Referring to, without repeating, the facts heretofore stated, we will add that the track was straight for a considerable distance each way from the crossing; that the right of way was about 86 feet wide, it being 42.9 feet from the west gate to the track. At about the point where one would enter the gate on the west there was a depression or hollow some 18 to 24 inches deep, and from that point to the track was up grade about 2 or 3 feet to the track. The roadbed from the gate to the crossing was testified to be from 8 to 15 feet wide. We gather from the evidence that the crown or traveled part of the road was about 8 or 10 feet wide, and from ditch to ditch on each side was about 15 feet. Deceased was driving a secondhand Ford truck. It was testified that at the point where the road crossed the track the rails were 2 or 3 inches above the dirt—the whole rail was exposed. There was a knoll or ridge running east and west across the track some 150 or 200 feet north of the crossing; the way the train was coming. This elevation of some 3 or 4 feet began at or near the crossing and there was a cut through this knoll or ridge. On this knoll on the right of way there were weeds growing at the time of the accident. They grew in clusters and were from 2 to 3 feet high. There was also a line of telegraph poles on the west side of the right of way 20 feet from the track, and some sweet gum bushes and a wire fence. The timber grew right up to the edge of the right of way. There was considerable controversy as to whether these objects, or any of them, obstructed the view of the approaching train; it being shown that they did so at a point at or near the gate, but that, after advancing a short distance, some 15 or 20 feet, on past the line of telegraph poles from the gate, the view was clear and the train could have been seen. The truck was not provided with a self-starter, but had to be cranked in order to start. We think the evidence shows that when deceased got to the west gate he stopped his engine, opened the gate, then cranked the car, and was moving on and over the crossing when struck and killed. Just what deceased did after entering on the right of way is not certainly known; the evidence as to this is wholly circumstantial. We think it evident from the testimony of appellant's engineer Hamilton that deceased did not know of the approach of the train until he was up on the track and the train right on him. It is contended by appellant that, if this be true, it shows that deceased did not stop, look, or listen for the approaching train, because if he had done so he would have seen and heard the train. This contention rests only in presumption. That there can be no presumption indulged that deceased was guilty of contributory negligence is well settled. In the absence of evidence to the contrary, it must be assumed that he acted as a reasonably prudent person would under all the circumstances: Texas & P. R. Co. v. Shoemaker, 98 Tex. 456, 84 S. W. 1049; Wells, Fargo & Co. v. Benjamin, 107 Tex. 331, 179 S. W. 513; Hines v. Richardson (Tex. Civ. App.) 232 S. W. 889; Beaumont, S. L. & W. R. Co. v. Sterling (Tex. Civ. App.) 260 S. W. 320. Under the facts, can it be said that deceased was guilty of contributory negligence as a matter of law? We do not think so. While the law imposes upon one who is about to go upon a railroad crossing the duty to exercise ordinary prudence for his own safety, there is no statute in this state that requires a person about to cross a railroad track to either look or listen for an approaching train, and his failure to do so does not, of itself, constitute contributory negligence as a matter of law. Frugia v. Railway, 36 Tex. Civ. App. 648, 82 S. W. 814; International & G. N. R. v. Tinon (Tex. Civ. App.) 117 S. W. 936 (writ refused); Citizens' Railway v. Robertson, 58 Tex. Civ. App. 566, 125 S. W. 343 (writ refused); Trochta v. Railway (Tex. Com. App.) 218 S. W. 1038; Texas & N. O. R. Co. v. Harrington (Tex. Com. App.) 235 S. W. 192; Payne v. Young (Tex. Civ. App.) 241 S. W. 1094; Beaumont, S. L. & W. R. Co. v. Sterling (Tex. Civ. App.) 260 S. W. 320. It cannot be said as a matter of law that any one or more things that deceased did or failed to do were prima facie the failure to use such care and caution as a reasonably prudent person would have exercised under like circumstances. Gulf, C. & S. F. R. Co. v. Shieder, 88 Tex. 163, 30 S. W. 902, 28 L. R. A. 538; Missouri Pac. Ry. Co. v. Lee, 70 Tex. 501, 7 S. W. 857. In the case last cited, the defendant railway company asked instructions to the effect that it was the duty of the deceased to make use of his senses of sight and hearing to discover an approaching train, and that, if he was injured by reason of failing to look, when by looking before driving upon the track he could have seen the ap-

proaching train, recovery could not be had. In passing upon this question, the Supreme Court said:

"Our courts have refused to recognize as the duty of the trial judge to attempt to define duties, neglect of which would be negligence, in absence of statutory definitions of duties which, disregarded, are negligence as matter of law. * * * Appellants insist that the testimony discloses a total absence of care on part of deceased, and that his death was caused by his recklessly attempting to cross the track, when any, the slightest, care would have informed him of the danger. What is due care under a given group of facts must be determined by the jury by applying the rule as to what, in their judgment, a man of ordinary prudence would have done under the attendant circumstances. It is reasonable that a sane man will not knowingly and recklessly expose himself to imminent bodily danger—that the instincts of self-preservation existed."

As before said, we think it may be inferred that deceased did not know of the presence of the approaching train at the time he drove upon the track. If so, why did he not know of it? He was driving an old secondhand Ford truck, which, of course, made some noise when running. He was traveling along a road next to the right of way skirted with timber. He had to stop and open the gate. He then had to crank his truck, and when the truck engine started it made the usual noise of a running automobile engine. He was then down in a depression of some 18 to 24 inches, and when he started up to drive across the track, his attention was necessary to stay upon the approach up grade to the track and over the exposed rails. The view was obstructed in the direction the train was coming when he was at and near the gate. A typical March wind was blowing from him toward the train and the train was coming through the cut in the knoll or ridge upon which there were weeds growing, and it may be that, with his attention given to driving his truck and other matters to engross his attention or perhaps to have obscured his view and to in some measure prevent his hearing the noise of the approaching train, he failed to detect same. In any event, he had the right to be on the road and to cross the railroad track, and under the facts and circumstances in evidence it was a question of fact for the jury's determination whether he was guilty of contributory negligence, and under proper instructions of the court they found that he was not so guilty, and the evidence should be considered in the light most favorable to the verdict. Kirksey v. Traction Co., 110 Tex. 190, 217 S. W. 139; Lancaster v. Browder (Tex. Com. App.) 256 S. W. 905.

"The test to be applied of ordinary care on the part of those using the highway is usually one of fact for the jury, and this is true, not only when the facts and surrounding circumstances are in dispute, but also when the facts may be undisputed, if the inferences from the facts admit of different reasonable conclusions. This is so because the question of negligence is, after all, one of conclusion from facts and circumstances, and it is not always proper to say that but one conclusion can be drawn from the same undisputed facts. Bronson v. Oakes, 22 C. C. A. 520, 76 F. 737; Railway v. Murphy, 46 Tex. 356, 26 Am. Rep. 272. For deceased's act to constitute contributory negligence, as a matter of law, it must have been done in violation of some law, or it must appear so opposed to the dictates of common prudence as that all reasonable minds would, without hesitation or doubt, conclude that no careful person would have committed it." Beaumont, S. L. & W. R. Co. v. Sterling (Tex. Civ. App.) 260 S. W. 320; Lee v. Railway, 89 Tex. 588, 36 S. W. 63.

We think reasonable men might differ as to the conclusion to be drawn from the facts and circumstances shown here, and therefore that the issue was properly submitted to the jury. The questions of contributory negligence and whether, if same was found, such negligence was a proximate cause of deceased's death, were for the jury and were determined by the jury against appellant.

The judgment must be affirmed for the further reason of the jury's finding on the question of discovered peril. The jury found that the engineer in charge of the train failed to use ordinary care to use all effective means in his power consistent with the safety of the train and passengers thereon to avoid striking deceased after he had discovered deceased and realized his danger, and that such failure was negligence and a proximate cause of the injury and death of deceased. Appellant challenges this finding as so against the great weight and preponderance of the evidence as to be wrong and should not be permitted to stand. Hamilton, the engineer in charge of the train, and who was on the side of his engine next to deceased, testified:

"I saw the deceased just before the accident. He was about halfway between the right of way fence and the track. I was about 250 feet from the crossing. That is only an estimate. I didn't measure it. * * * The distance of 250 feet I mentioned while ago was just an estimate, of course. There are 5,280 feet in a mile. I know I was not as far as 350 or 400 feet when I saw Mr. Sherman. I could not possibly have been over a pole length and a half, and there are 176 feet to the pole, when I first saw Mr. Sherman. He was then about halfway across the right of way. Mr. Sherman was traveling about 5 or 6 miles an hour, I judge."

He further testified:

"When I first saw the party approaching, I did all in my power to avoid the accident. I put the brakes in emergency, and blowed a couple of alarm whistles at the man in the car and shut the engine off. That was all that I could do. I put the brakes in emergency. I will demonstrate just what I was doing and how I was doing it. I shut the engine off with this hand, grabbed the brake valve with the right hand, the throttle with the left, and put on the

brake with the right hand. I moved my hand from the throttle to the whistle and blew a couple of little blasts of the whistle."

On cross-examination he testified:

"I said that I took my left hand, put on the throttle after I saw the man, and pushed in the throttle, and shut off the steam. That throttle was a long lever, comes right out something like this (indicating). I grabbed that throttle and pushed it in. I took my right hand and grabbed the brake valve, which is right in front of me. I reached over and got that with my right hand this way. I did that so as to put that brake on. I threw my air on, and then I whistled two little blasts. Mr. Sherman was just approaching the track then. When I whistled, he looked up at me. I was right on him."

Several witnesses who were near the scene, but who could not see what happened, testified that they heard the crash of the collision before the whistle was sounded. They heard the crash before they heard the whistle. The engineer said that he was about a pole and a half length from deceased when he first saw him. A pole length is 176 feet. That would have made about 264 feet between the engine and deceased. The deceased was about halfway across the right of way and traveling about 5 or 6 miles an hour. He was at least 20 or 25 feet from the track. It was in evidence that a car running 5 or 6 miles an hour could be stopped in about 2 or 3 feet. Blowing the whistle was the last thing the engineer did in his effort to avoid striking deceased. His efforts were directed to slowing up or stopping the train. If he had instantly sounded the whistle when he first saw deceased, it is very likely that it would have arrested the attention of deceased and he could have easily stopped his car before reaching the track. To be sure, the engineer did what he conceived to be proper in the emergency. However, as was said in Trochta v. Railway (Tex. Com. App.) 218 S. W. 1039, the test of liability is not whether the engineer, after discovering the peril of deceased, acted in good faith in an effort to avoid the injury, but whether he acted as a man of ordinary prudence would have acted under the circumstances. This was a question to be determined by the jury from all the evidence. Missouri, K. & T. R. Co. v. Reynolds, 103 Tex. 31, 122 S. W. 531. In the cited case, Judge Williams said:

"The evidence shows that several things suggested themselves as proper to be done and that some of these were done, or attempted, by the employés to avert the collision. Was it best for the employés to do as the jury might find they did, or that they should have directed their attention more to the stopping of the engine? Was what they did in the emergency in which they thus suddenly found themselves the exercise of that kind and degree of care that men of ordinary prudence would have used in their situation? We think it quite clear that these are questions to be determined by the jury

and to be determined from the facts and circumstances as they existed and appeared at the time and not by looking backward and inquiring merely whether or not the event proved that some other course than that pursued would have been more effectual in preventing the injury. * * * The most complete diligence to stop an engine, while under some conditions constituting all that could be expected, might, under others, be less than the full performance of the duty to exercise the care of an ordinarily prudent person. In some situations warnings and other expedients are more effectual than any effort to stop would be. (Sanches v. San Antonio & A. P. Ry. Co., 88 Tex. 120 [30 S. W. 431]. While we are far from any purpose to relax the requirement which the law, for the preservation of life, makes of those controlling agencies in the operation of which [life] is put in peril, we must hold that such requirement is that they exercise the care which persons of ordinary prudence would employ in situations involving such immediate danger, and that the jury are the judges as to what measures of diligence are necessary to constitute that care under given circumstances."

The cases of San Antonio & A. P. R. Co. v. Hodges, 102 Tex. 524, 120 S. W. 848, and Sanches v. Railway, 88 Tex. 117, 30 S. W. 431, hold to the same effect. In the latter case, as in the case at bar, the engineer testified that upon realizing plaintiff's danger he did all in his power to stop the engine, thinking that was the best thing to do, but did not sound the whistle to warn plaintiff. The Supreme Court affirmed the judgment against the railway, and Judge Denman, in commenting upon this testimony, said:

"We are of the opinion, that the jury might have found that the engineer was guilty of negligence in failing to blow the whistle to warn plaintiff * * * and that if so, plaintiff would have been entitled to recover, though negligent in attempting to go upon the track."

Under the circumstances of the instant case, we think an ordinarily prudent person would have realized the futility of attempting to stop the train before reaching the crossing and would have instantly sounded the whistle to alarm deceased and cause him to stop and thus have avoided the accident. The jury passed upon the question and found against appellant. We think the finding has support in the record.

Appellant's nineteenth proposition, based upon its fifty-seventh assignment of error, asserts error in the court's refusal to permit it to offer a witness to testify as to the earnings of the deceased after the case had been closed, the jury charged, and the argument begun. The proposition is overruled. The court's qualification to appellant's bill of exception is:

"At the time the defendant concluded its testimony in chief counsel stated that defendant reserved the right to place the witness Wright on the stand if he could be procured before the case closed. Thereafter plaintiff introduced rebuttal testimony and all parties rested. One

day was consumed thereafter in the preparation of the court's charge. Then after the charge had been given to the jury and the argument had been begun by plaintiff's counsel, defendant's counsel stated that the witness Wright had arrived and asked permission to put him on the stand at that time. The witness Wright resided at Cleveland in Liberty county."

According to the court's qualification the reservation by appellant to use the witness was "if he could be procured before the case was closed." The witness resided in the same county in which the case was being tried. The case had been closed for one day, the charge had been prepared and read to the jury, and argument for plaintiff was in progress. The diligence of appellant to secure the witness was before the court, and it was within the sound discretion of the court as to whether the argument should be stopped and further evidence offered, which might call for rebuttal evidence by the opposite party, thus delaying the completion of the trial of the case. We think no abuse of this discretion is shown.

Appellant's sixteenth, twenty-first, and twenty-second propositions, to the effect that the court erred in not setting aside the verdict of the jury and granting appellant a new trial because of improper argument of counsel for appellees to the jury, are overruled. The twenty-first proposition recites that it is based upon appellant's fifty-seventh assignment of error. This assignment does not complain of the matter asserted in the proposition, but complains that the court erred in refusing to reopen the case that appellant might offer additional testimony. The proposition, not being based upon a proper assignment, cannot be considered. The twenty-second proposition is based upon appellant's fifty-sixth assignment of error, which sets forth the argument complained of, as follows:

"Gentlemen, I am asking you to read these questions and answer all questions from 1 to 14, answer them Yes, Yes, Yes. When you get to 15, then answer all questions with reference to the negligence of the defendant company, No, No, No."

The court's qualification to the bill shows that:

"No objection or exception was taken to the argument by defendant's counsel at the time, nor was any request made of the court to instruct the jury not to consider said argument."

The first time the matter was called to the court's attention was in appellant's amended motion for new trial. No injury is shown. Employers' Liability Assurance Corporation v. Williams (Tex. Civ. App.) 293 S. W. 210, 215.

The sixteenth proposition asserts that said argument of counsel for appellees, telling them to answer questions 1 to 14 in the affirmative and all the others in the negative, had the effect of instructing the jury the effect of their findings. We do not believe that appellant had made any showing of injury or prejudice resulting from the argument complained of. The question of whether the argument was calculated to prejudice the rights of appellant is left to the reasonable discretion of the trial court in passing upon the motion for a new trial, and when, in the exercise of such discretion, the trial court has determined this question, an appellate court is not warranted in setting its holding aside. It is only when from the record on appeal it is clear that the argument was calculated to prejudice the rights of the party complaining that an appellate court is authorized to overrule the holding of the trial court. Unless it clearly appeared that the trial court has abused its discretion, its ruling must stand. Emberlin v. Railway (Tex. Com. App.) 284 S. W. 539. Moreover, the issues were clear and simple and such that any juror of average intelligence must have known the effect of his answer thereto. Where such is the case, argument such as here complained of is not hurtful, and, if error, is harmless error. Galveston, H. & S. A. R. Co. v. Miller (Tex. Civ. App.) 192 S. W. 593 (writ refused).

Appellant's twenty-third proposition complains that the amount awarded appellees by the jury is outrageously excessive, so much so as to evidence prejudice against appellant or bias in favor of appellees, and is against the great weight and preponderance of the evidence. Deceased was a man 42 years old, and had a life expectancy of 27 years. He was in good health, an active worker, was engaged in the timber business, which appeared to be lucrative, was also a trader, by which he made money. His wife testified that he was making about $300 per month net. We have carefully considered all the evidence as to his earning capacity, and conclude the judgment is not excessive. Nor do we find any evidence of bias or prejudice on the part of the jury in making the award.

Other propositions are presented which we do not deem it necessary to discuss. They have all been considered, and none of them are believed to show error, and are therefore overruled.

The judgment should be affirmed, and it is so ordered.

Affirmed.