**MISSOURI–KANSAS–TEXAS R. CO.**
of Texas, Appellant,

v.

**NEUHOFF BROS.,** Packers, Appellee.

No. 15152.

Court of Civil Appeals of Texas. Dallas.

Oct. 19, 1956.

Rehearing Denied Jan. 11, 1957.

O. O. Touchstone and G. H. Penland, Dallas, for appellant.

Turner, Rodgers, Winn, Scurlock & Terry and James R. Rodgers, Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal from an order granting a temporary injunction to appellee Neuhoff Bros., Packers, restraining appellant Missouri-Kansas-Texas Railroad Company of Texas, "their agents, officers, servants, employees and receivers from willfully blocking or obstructing Alamo Street for more than five minutes at any one time by permitting their trains or equipment to stand on or across such crossing * * *."

In its original petition appellee alleges a violation by appellant of two ordinances of the City of Dallas, Texas, both of which ordinances provide that railroads shall not block any street longer than three minutes. In·the alternative appellee pleads a violation by appellant of Art. 787 of the Penal Code of the State of Texas prohibiting the willful blocking of railroad crossings for longer than five minutes at one time. The order appealed from expressly prohibits appellant from willfully blocking Alamo

Street for longer than five minutes, thus restraining a violation of Art. 787 of the Penal Code. The order does not undertake to restrain a violation of the two City ordinances. Therefore, in this opinion we shall not discuss the effect or validity of the City ordinances.

Article 787 of the Penal Code is as follows: "Any officer, agent, servant or receiver of any railway corporation who wilfully obstructs for more than five minutes at any one time any street, railway crossing or public highway by permitting their train to stand on or across such crossing, shall be fined not less than five nor more than one hundred dollars."

At two hearings, one held September 29, 1955 and the other December 15, 1955, the court heard testimony from eleven witnesses and admitted into evidence twelve exhibits. On February 3, 1956 the court granted the temporary injunction.

In its order the court made findings of fact extending through fifteen paragraphs. Included among the findings are the following:

"(a) The blocking by standing trains and equipment of defendant has repeatedly occurred and has extended in time over the five-minute period allowed by the laws of the State of Texas, in Article 787, Penal Statutes, and Dallas City Ordinance No. 4775, and amendment No. 85,14s 3. (b) Alamo Street, across the intersection with defendant's tracks, is the sole readily available access road to plaintiff's property where a packing plant is owned and operated by plaintiff. (c) Alamo Street terminates for all practical purposes at or near plaintiff's plant. (d) Plaintiff's property abuts on Alamo Street and plaintiff is irreparably damaged by defendant's repeated acts of blocking the streets for periods of time greater than five minutes. (f) Defendant is equipped to comply with the law and ordinance which prevent blockage of a street by a standing train for periods greater than five minutes. (g) That if de-

fendant properly used its available equipment, no violation of the law would result. (j) Defendant also could comply with the law if it so chose. (k) The repeated blocking of Alamo Street for periods in excess of five minutes has created hazardous conditions in the operation of plaintiff's business. (l) Shipments of goods into and out of the plant have repeatedly been blocked by defendant's violation of the law. (n) For an extended period of time, plaintiff has been unsuccessful in getting relief from defendant's recurring illegal acts through private negotiations with officials of defendant. (o) Court finds as a matter of law that a multiplicity of suits would result if plaintiff sought relief from defendant's recurring illegal acts in an action at law for damages."

Many of the basic facts are undisputed. Appellee's packing plant has been at its present location since about the year 1900, though ownership of it was not acquired by appellee until the year 1932. Alamo Street begins at McKinney Avenue and runs in a northwesterly direction. It crosses Cedar Springs Avenue, then several blocks farther on passes the railroad tracks just before reaching appellee's packing plant. It formerly went on past the packing plant and connected with Oak Lawn Avenue, but since the construction of an overpass nearby and consequent changes in the layout of thoroughfares in the neighborhood, Alamo Street has come to a dead end a short distance beyond the packing plant. From McKinney Avenue on past the packing plant, it is a black-top-paved street. It has curbs beyond Cedar Springs Avenue as far as Burris Mills, a short distance before it crosses the railroad tracks.

Appellee's plant abuts Alamo Street not far beyond the railroad tracks. The street affords the only readily accessible way to and from the plant. Appellee operates 54 trucks and has about 550 employees. Its trucks and many of its employees and those of its customers who call at the packing plant, use Alamo Street for ingress and egress.

The evidence is voluminous and as to certain controversial fact findings made by the trial court, it is not undisputed. But there is evidence in the record to support each of the findings. For example, there is ample evidence that the railroad's trains have many times over a period of years blocked the crossing for periods varying from more than five minutes to more than thirty minutes. Appellee has protested on numbers of occasions, and conferences and negotiations have taken place. Though the record is not without evidence that some efforts have been made on occasions by the railroad officials to remedy the situation, the evidence is overwhelming that repeated blockings of the crossing have continued. There is evidence also that the railroad has equipment available which, if used, would enable it to break its trains so as to avoid blocking the way. At least one other railroad uses the same kind of equipment—air lines running under the crossing, which can be connected with both parts of a separated train—and successfully avoids blocking street crossings. In the interest of conserving space, we shall not set out a detailed elaboration of the evidence.

█ █ Appellant's points on appeal Nos. 1 and 2 assert that the proper and adequate remedy for violations of Art. 787 of the Penal Code is criminal prosecution, hence the issuance of the temporary injunction was error. It is true that in the absence of statutory authority an injunction will not be granted when its only purpose and effect is to restrain the commission of a crime. It is held that in such instances a criminal prosecution affords an adequate remedy. But the rule is otherwise when private property is damaged. Then, in the face of repeated and continued violations, an injunction will lie in order to protect the applicant's property; and the property owner will not be relegated to actions for damages. Lamb v. Kinslow, Tex.Civ.App., 256 S.W.2d 903; Southern Traffic Bureau v. Thompson, Tex.Civ.App., 232 S.W.2d

742; Quanah Acme & P. R. Co. v. Swearingen, Tex.Civ.App., 4 S.W.2d 136.

█ In its third point appellant says that appellee failed to introduce evidence which, if believed, would establish that the Alamo Street crossing is a dedicated street; therefore the issuance of the temporary injunction was erroneous. Appellant introduced evidence showing that in the year 1881 appellant's predecessor in title acquired the land on which appellant's tracks are located and which land is crossed by Alamo Street. There is no evidence that the crossing has ever been dedicated as a street.

The evidence does show however that Alamo Street including the crossing has been used by the public as a street for at least 39 years, and perhaps longer. It is paved and partly curbed. A very considerable traffic flows over it, and has for many years. This has been with appellant's consent and acquiescence. The facts are sufficient to support a finding that the public, including appellee, has acquired prescriptive rights in the use of the thoroughfare as a street. Atlantic Coast Line R. Co. v. City of Goldsboro, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721; Houston E. & W. T. R. Co. v. Sherman, Tex.Civ.App., 10 S.W.2d 243 (reversed on other grounds, Tex.Com.App., 42 S.W.2d 241); City of Dublin v. Barrett, Tex.Civ.App., 242 S.W. 535; Gulf, C. & S. F. R. Co. v. Bryant, Tex.Civ.App., 204 S.W. 443. Appellant's third point is overruled.

█ In its points Nos. 4 and 6 appellant contends that under the uncontroverted evidence there is no showing that appellant has ever violated Art. 787 of the Penal Code. Though there is evidence of many instances of the blocking of the crossing for periods of time longer than five minutes, appellant says there is no evidence that such blockings were willful or unnecessary.

We think there is ample evidence in the record in contradiction of appellant's contention. Appellant's own employee, its

Superintendent for the North Texas Division, testified that the blocking was not necessary. The Yardmaster for another railroad testified that his railroad has remedied a similar situation by running a steel pipe under a crossing, which pipe has an air hose on each end to connect with the air hose on the cars, thus making it possible to break the train, and still allow the air to pass through the entire train. Appellant has a similar device running under the Alamo Street crossing, but does not use it.

Appellee's president, its credit manager, and one of its purchasing agents testified to protests and negotiations with appellant's officers and employees from its president to a watchman at the crossing, but to no avail. In fact there is testimony that notwithstanding appellee's protest, the situation has become more critical in the last two years. We overrule appellant's points Nos. 4 and 6.

■ Appellant's point No. 5 charges that the crossing is used by trains engaged in interstate commerce, therefore the injunction is a burden and servitude upon interstate commerce in violation of Art. 1, Sec. 8, Clause 3 of the Constitution of the United States.

In our opinion the point is not well taken. The testimony shows that appellant has equipment which, if used, would make it possible to avoid the blockings. The present situation was found by the court to be hazardous and a nuisance. Art. 787 of the Penal Code is a valid exercise by the State of Texas of its police power. Atlantic Coast Line R. Co. v. City of Goldsboro, supra; 15 C.J.S., Commerce, § 11, p. 268; 11 Am.Jur. 85. We overrule point No. 5.

■ It should be borne in mind that in the matter of granting temporary injunctions the trial court is granted very considerable discretionary powers. The general rule is that its order granting or refusing a temporary injunction will not be reversed in the absence of an abuse of discretion. In this case we find no abuse of discretion.

The judgment of the trial court is affirmed.

## On Rehearing

■ In its point No. 4 appellant asserts that the uncontroverted evidence shows that appellant has never violated Art. 787, Penal Code. In its argument under point No. 4 appellant says that Art. 787, Penal Code, applies to trains alone, not to switching operations, classification, interchange of freight cars or passenger cars in the yard of a railroad.

In support of its contention that there is a vast difference between the operation of a train or the movement thereof, and a switching operation in the yards of a railroad, appellant cites United States v. St. Louis & S. F. Ry. Co., D.C., 112 F.Supp. 646; United States v. Chicago B. & O. R. Co., 7 Cir., 199 F.2d 223; and United States v. Panhandle & S. F. Ry. Co., 5 Cir., 203 F.2d 241. These cases make a distinction between a "train movement" and a "switching operation" in the interpretation of the Safety Appliance Acts, 45 U.S.C.A. §§ 1–16, with reference to the application of the power brakes provision of said Acts. However, their holdings seem to us to give little if any support to appellant's position in this case.

Appellant has not cited us to a case and we know of none in which the word "train" as used in Art. 787, Penal Code, has been given the restricted meaning for which appellant contends. We do not believe that the Legislature of the State of Texas intended to exempt trains engaged in switching operations from the effect of the statute, or that the Legislature intended indirectly to grant a permit to railroads to block crossings more than five minutes with their switching operations.

The word "train" has a broad meaning. 74 C.J.S., Railroads, § 1, pp. 334–336. We believe that it is in this broader sense that the word is used in Art. 787, Penal Code.

The motion for rehearing is overruled.